CRIBB, Appellant, vs. MORSE and others, Garnishees, Respondents.

*May 23 — September 23, 1890.*

*Debtor and creditor: Partnership: Insolvency: Mortgage to secure individual debt.*

A bank loaned money to one member of a firm and, to secure payment thereof and of certain moneys previously owing by the firm, took a note signed by the partners individually and a mortgage of firm property signed in the same way. The bank knew at the time that the firm was insolvent and that the money then loaned was to pay the individual debt of the partner to whom it was loaned. *Held,* that to the extent of the money so loaned the mortgage was void as against other creditors of the firm.

APPEAL from the Circuit Court for *Sauk* County.

Garnishment. The facts are sufficiently stated in the opinion.

· *S. U. Pinney* and *A. L. Sanborn*, for the appellant.

*G. Stevens*, for the respondents.

The following opinion was filed June 21, 1890:

Orton, J. The firm of J. & P. Hagenah, consisting of John H. and Peter Hagenah, dealers in hardware and agricultural machinery at Reedsburg, Wisconsin, were indebted to the appellant, and he commenced an action thereon and caused *George T. Morse, Winchester* and *Keith*, proprietors of the private bank called "The Citizens Bank," of that place, to be summoned as garnishees. On the trial of the issue between the appellant and said garnishees, the following facts appeared in evidence:

In June, 1874, the said Hagenahs formed a partnership with one Henry Geffert in said business, which continued until January, 1883, at which time the present partnership was formed. In 1878 John H. Hagenah became guardian of certain minor children, and held for them, as such guardian, the sum of $5,000. After that time said firm, besides the above business, were interested in the brewery business, and were engaged in buying wheat, and one Smith was interested with them in the wheat business, and one Henry Dierke was interested with them in the brewery business. The said John H. Hagenah testified, as a witness, that all of said $5,000 went into the business of said firm as it was needed from time to time, but he could not tell at what times or in what sums, and that some of it was used in buying wheat, and some of it in the brewery business, and some in the hardware business, but in what amounts he could not tell, and he kept no account of it whatever, and he could not tell what part of the money was paid for one thing and what part for another. There was no accounting or settle-

ment of this money between him and the firm, and it does not appear that the other partners of the firm knew anything about it, or that there was any account of it on the books of the firm, and there had never been any acknowledgment or recognition of it by the partnership in any way whatever. All the minor children, except one, had become of age, and had been paid their shares of said fund by the said John H. Hagenah, their said guardian, but to pay the last one he was compelled to obtain some money from said bank, through and by the aid of friends, in the year 1888.

About the 15th day of June, 1889, the last heir interested in said fund either had become, or was about to become, of age, and it became necessary for the said John H. to obtain the money to pay her share. As merchants they had become grossly insolvent, and the firm had made many loans of the bank from time to time, secured by collaterals, but had not paid anything directly upon them, and the bank had received nothing upon them, except through the collaterals, until May 22, 1889, when the firm placed all such loans yet unpaid in the form of a $5,000 collateral note, due one day after date, signed by J. & P. Hagenah. On said June 15th the said John H. called upon the said *Morse*, the president of the bank, and told him that the last heir had to be paid, and he must raise the money somewhere. He testified that he presumed *Morse* knew about his having used up the money that belonged to the heirs, and what this was for, because he had got some money of the bank for such purpose before. The amount he required for such purpose was $2,200; and it was arranged that $800 of the above collateral note and $500 due a creditor of the firm, in the hands of the bank for collection, should be placed with the said $2,200, making in all $3,500, in the form of a note payable to the bank on demand, signed first by John Hagenah and then by Peter Hagenah. The note was se-

cured by a mortgage on the goods of the firm, signed in the same way. It was John H. Hagenah alone who borrowed the money; and his partner, Peter Hagenah, had nothing to do with obtaining it, except by his signature to said note and mortgage.

The firm kept on selling from the stock, and the mortgage had not been filed, and it became apparent that the corporation of Hibbard, Spencer, Bartlett & Co., of Chicago, to whom the firm was indebted in the sum of about $9,000, was about to take steps to obtain payment. Then on July 8, 1889, a new note and mortgage, precisely like the first one, and signed in the same way, and in place thereof, were given to said bank, and said bank took immediate possession of all of said stock by virtue of said mortgage. The assets of said firm were only about $14,000, and their indebtedness was over $20,000; and it is evident that the proprietors of said bank knew that said firm was insolvent, although they may not have known the extent thereof. Very soon after the bank took possession of said stock, the above corporation of Hibbard, Spencer, Bartlett & Co. took a second mortgage thereon, as also an assignment of all the accounts of said firm, which constituted all of the property of said firm, as security for their said claim. Said corporation was also summoned as garnishee by the appellant, and the issue in that case was tried at the same time. [See *Cribb v. Hibbard, Spencer, Bartlett & Co., ante*, p. 199.] But this case is confined to that of the appellant against the bank. Pending the proceedings, by stipulation of the parties the said stock was sold for $3,900, which was paid into court to await the result.

The learned circuit judge directed the jury to find that the said chattel mortgage so given by John and Peter Hagenah to the Citizens' Bank was and is a valid security, and that the said proprietors of said bank are entitled to hold the proceeds of said goods to the extent of said note.

The appellant having excepted to this direction and finding, and having appealed from the judgment, his learned counsel claim, and we think correctly, that said mortgage to the extent of that $2,200 borrowed of the bank by said John H. Hagenah to pay his individual debt to said heir, and for which he was liable on his bond as her guardian, was and is void. Peter Hagenah was not interested in said loan, and was therefore a mere surety on said note for John Hagenah as principal. It seems to be clear that the proprietors of the bank knew that the firm of J. & P. Hagenah was insolvent. They had so much to do with their affairs that they must have known that they were unable to pay their debts, and had been for a long time. They knew, also, that John H. Hagenah borrowed that sum of $2,200 of them to pay his debt to one of the heirs for whom he was guardian, and that it was his individual debt. There is no evidence that the proprietors of the bank knew that the said John H. ever claimed that he had used the moneys of said heirs in the business of the old firm of Hagenahs & Geffert, or that the present firm owed him anything on account of it. This claim that the present firm was or is indebted to John H. on account of the money of said heirs having been so used in the business of the old firm is recent, and is first made on the trial of this issue. It is at best a very suspicious and uncertain one. At least three persons interested in the business of said firm were also interested in the use of said money; and when they retired from the firm it is to be presumed that they accounted for their share of it, if any such claim existed. The said John H. is unable to give any intelligible account of it. If he is unable to recollect when or how it was used, he would probably not recollect if he had long since received it back from the old firm. His want of recollection of anything about it may arise from the fact that it was long since settled up and disposed of. But it is sufficient that there has never been

any recognition or acknowledgment of it by the old or the present firm. The said John H. did not tell *Morse* that the firm wished to borrow this $2,200 to pay him for the heir's money which he had used in the business of the old firm. Nothing of the kind was intimated, and no such claim was then made, and the proprietors of the bank knew nothing of any such claim or of any such fact. They knew only that John H. borrowed the money to pay his own individual debt to one of the heirs, and they loaned it to him for that purpose, and for no other, on the promise of security on the property of the firm. They loaned him money the year before, on the security of others, to pay another of the heirs.

The note is an individual one, and is *prima facie* evidence of an individual indebtedness. Bates, Partn. § 452; *In re Roddin*, 6 Biss. 377; *Hilliker v. Francisco*, 65 Mo. 598; *Freeman v. Campbell*, 55 Cal. 197; *Buffum v. Seaver*, 16 N. H. 160. It is conceded by the learned counsel of the respondent that the mere fact that one partner puts money into the concern for which he is individually liable does not make it a firm debt. It follows, therefore, that there was no evidence to show that the note was, or was intended to be, a partnership obligation, or anything different from what the individual signatures import it to be. The old $5,000 note to the bank was signed by the name of the firm. Why was this note not signed the same way, if it was not because the parties all knew that the $2,200 of it was to pay the individual debt of John H. Hagenah? It might be that if the firm had at any time given the firm note for this money to the heir, or to the bank to raise money to pay the heir, for the consideration that it had been used in the business of the firm, such note might be good, excepting as to existing creditors; but that is the fullest extent to which the doctrine can be carried. Here, no such note was ever given by the firm, and there is no

evidence that either Peter Hagenah or the firm had ever recognized or acknowledged, in any way, this to be a firm debt. The case is very different from *Haben v. Harshaw*, 49 Wis. 379. It cannot be claimed that this note so signed is any such acknowledgement, for it is *prima facie* evidence of individual liability. The mortgage given was void, because the firm, being insolvent, attempted by this means to appropriate the partnership property to the payment of the individual debt of one of the partners.

All the material questions in this case were involved in the case of *Willis v. Bremner*, 60 Wis. 622. In that case the partnership of Brearly & Adams consisted of Brearly and H. K. Adams, and they sought to obtain a loan of $1,000 from the bank. H. K. Adams gave his notes to one D. H. Adams, and he indorsed them to the bank, which discounted them and placed the money to the credit of the firm on the bank books. The firm, being insolvent, made an assignment and preferred these notes when it was lawful to make preferences. The sheriff took the goods assigned, on attachments in favor of creditors, and the assignee brought the suit against the sheriff for the conversion of the property. The court below held the assignment valid, but this court reversed the judgment, and held the assignment void, because it preferred the individual debt of one of the partners. There was nothing in the assignment that showed anything but the notes given in this form, but the court below allowed proof of all the facts stated. The bank knew nothing about the notes except in the form in which they were given. That case is much stronger in favor of the doctrine contended for by the learned counsel of the respondents than this case, in the facts proved. Here, the bank knew nothing about any transaction to make the $2,200 a partnership matter, except the note and mortgage signed by the individual partners, which imported the individual indebtedness of John H. Hagenah as principal; but, on the

other hand, the bank did know that the $2,200 part of the note was to pay the heir what John H. Hagenah owed her, and that he borrowed it for that purpose. The above case is conclusive against the claim of the mortgagee; but see, also, *Menagh v. Whitwell*, 52 N. Y. 146; *Goodbar v. Cary*, 16 Fed. Rep. 316; *Ferson v. Monroe*, 21 N. H. 462; *Cron v. Cron's Estate*, 56 Mich. 8; *Scott v. Dansby*, 12 Ala. 714; Bates, Partn. § 566.

*By the Court.* — The judgment of the circuit court is reversed, and the cause remanded with direction to hold the mortgage of the garnishees void as to the sum of $2,200 loaned to pay the individual indebtedness of John H. Hagenah, and valid only as to the residue, and to render judgment accordingly.

A motion for a rehearing was denied September 23, 1890.