CLARK-JEWELL-WELLS COMPANY *v.* TOLSMA.

1. PARTNERSHIP—INSOLVENCY — CREDITORS — RIGHTS — CREDITORS OF INDIVIDUAL COPARTNERS.

Creditors of an insolvent copartnership are entitled to the application of the firm's assets upon their claims to the exclusion of creditors of the individual partners, and a transfer of partnership assets to the creditors of the individual partners constitutes a fraud upon the creditors of the firm.

2. SAME—FIRM OR INDIVIDUAL DEBTS—EVIDENCE.

On a bill to reach assets of a partnership claimed to have been transferred to personal creditors of the partners in fraud of the rights of the creditors of the firm, evidence examined, and *held*, that money borrowed by the partners from the wife of one and the mother of the other with which to purchase the stock and good will constituting the assets of the firm, was borrowed by the partners in their individual capacity and was not a debt of the firm.

Appeal from Kent; Perkins, J. Submitted January 21, '1908. (Docket No. 107.) Decided March 17, 1908.

Judgment creditor's bill by the Clark-Jewell-Wells Company against William Tolsma and others. From a decree dismissing the bill, complainant appeals. Reversed, and decree entered for complainant.

*Smedley & Corwin,* for complainant.

*Lombard & Hext,* for defendants.

HOOKER, J. The complainant, a judgment creditor of William Tolsma and John Knottnerus, filed the bill in this cause to reach an interest in a land contract which it claims that they received from the vendor in the land contract for their stock and good will, together with some cash. By way of defense they claim that the interest in the land contract (which was conveyed through a deed of the land), went to Tolsma's wife and the mother of

151 MICH.—86.

Knottnerus, in payment of certain debts, viz., $500 to Mrs. Knottnerus and $632 to Mrs. Tolsma, incurred by the copartnership at the time they became copartners, for the purpose of buying the stock.

It appears not to be questioned that the stock was copartnership property, and that unless the claims of the women were debts of the firm, and not the personal debts of copartners, this payment was a fraud on creditors of the firm, who were entitled to the application of assets upon their claims against the insolvent copartners to the exclusion of creditors of the individual copartners. If not conceded, it is clearly the law, as the following cases cited by counsel show: *Hutchinson* v. *Dubois*, 45 Mich. 143, 147; *Heineman* v. *Hart*, 55 Mich. 64, 72; *Cron* v. *Cron's Estate*, 56 Mich. 8, 10; *Jackson Bank* v. *Durfey*, 72 Miss. 971, 978 (31 L. R. A. 470); *Bergman* v. *Jones*, 10 N. Dak. 520; *Cribb* v. *Morse*, 77 Wis. 322; *Ferson* v. *Monroe*, 1 Fost. (N. H.) 462; *Nordlinger* v. *Anderson*, 123 N. Y. 544; *Clements* v. *Jessup*, 36 N. J. Eq. 569.

The case, as we view it, turns on a question of fact, i. e., whether the claims of those women were firm debts, if we believe that they furnished the money as stated. The learned circuit judge found with the defendants upon both points. He saw the witnesses, and we should follow his conclusion were it not that the testimony in the case produces a strong conviction that these were personal and not copartnership debts. We will give some of the reasons.

1. The joint answer of the copartners, sworn to by both, states:

"The truth to be that at the time they engaged in business, this defendant, William Tolsma, borrowed from his wife the sum of $630.00 in cash which he invested in said business as his share of capital stock; that this defendant, John Knottnerus, borrowed from his mother the sum of $500.00 in cash which he contributed and invested in said partnership business towards his share of the capital stock; that at the time they sold out said business as aforesaid they were heavily in debt, said business having

been a losing one; they took the cash that they received from said sale and paid it upon their indebtedness to creditors from whom they had purchased merchandise; that as a portion of the purchase price received from said Boonstra and Posthumus was the piece of real estate described in paragraph VII of complainant's said bill of complaint, subject to a land contract on which there remained unpaid $900.00 or thereabouts, which these defendants accepted for its face value towards the purchase price for said business; and that the deed to the same and an assignment of said land contract was made to the said Minnie Tolsma and Jennie Knottnerus as a part payment to them of moneys which they had borrowed from them and invested in said business as aforesaid."

2. The answer of Jennie Knottnerus states:

"The truth to be that at the time they engaged in business the defendant William Tolsma borrowed from Minnie·Tolsma, his wife, the sum of $630.00 in cash which he invested in said business as his share of the capital stock; that the defendant John Knottnerus borrowed from this defendant the sum of $500.00 in cash which he contributed and invested in said business towards his share of the capital stock; that at the time they sold out said business as aforesaid they were heavily in debt, said business having been a losing one; that they took the cash that they received from said sale and paid it upon their indebtedness to creditors from whom they had purchased merchandise; that as a portion of said purchase price received from said Boonstra and Posthumus was the piece of real estate described in paragraph VII of said complainant's bill of complaint, subject to a land contract on which there remained unpaid $900.00 or thereabouts, which was accepted by the said defendants, William Tolsma and John Knottnerus, for its face value towards the purchase price of said busine:s; and that the said defendants, William Tolsma and John Knottnerus, had the deed thereto and an assignment of said land contract made to this defendant and Minnie Tolsma as a part payment of said loans above mentioned, and that said deed and assignment was accepted by this defendant and the said Minnie Tolsma for its face value and applied by them at the time of said conveyance upon the indebtedness due to them from the said William Tolsma and John Knottnerus."

3. The answer of Minnie Tolsma states:

"The truth to be that at the time they engaged in the business the defendant, William Tolsma, borrowed from this defendant the sum of $630.00 in cash which he invested in said business as his share of the capital stock; that the defendant, John Knottnerus, borrowed from Jennie Knottnerus, his mother, the sum of $500.00 in cash which he contributed and invested in said business towards his share of the capital stock."

All of these were sworn answers.

4. John Knottnerus testified:

"At the time it was purchased I had some money of my own, about $150. I put $132 of my own into the business. I obtained $500 from my mother and Mr. Tolsma obtained $632 from his wife, that made $1,264, which was put into the business. We paid $1,064 for the stock and that left $200 in cash for working capital. * * *

"When this money was obtained from my mother and Mrs. Tolsma there was no written agreement between me and Mr. Tolsma and the ladies concerning it. The agreement was that we were to pay back this money from the proceeds of the business, or in case we sold from the assets of the business. The debt was to be treated as a partnership debt. Interest was paid on it before we sold out. It was paid in merchandise. * * *

"The proceeds of that sale were used to pay up our creditors as far as it went. My mother, Mrs. Knottnerus, was paid one-half of contract, $321.00 and some cents and enough cash to make $400.00, and Mrs. Tolsma was paid half of the contract and enough cash to make $450.00. The rest of the cash was paid out to different creditors. It was distributed among them. Some of it was paid to the Clark-Jewell-Wells Company. I think somewhere from $125 to $150 was paid to them. I am not sure, I have forgotten that. It may not be that much. I think they received somewhere near one-half of their claim. I cannot state positively. I know they received some money on their account, two or three payments I made them. All the moneys received were distributed among the creditors. The land contract read to Posthumus and his wife of the first part and Andrew DeGroot and wife of the second part. Posthumus held a deed of the property. He had previously sold it to Andrew DeGroot and wife on contract. Posthumus assigned the contract and

deeded the property to us. The deed ran to my mother and Mrs. Tolsma, jointly."

Tolsma testified:

"Money was borrowed to buy the business. We borrowed $500 from Mrs. Knottnerus and I think we borrowed $632 from Mrs. Tolsma.

"John Knottnerus took care of the books and had charge of the money and payments of bills. I was out on the road delivering goods and taking orders. I have not very much education."

It is clear that these copartners had equal interests; one put in $132 from his own pocket, the other had no money. It is evident that this was equalized in the borrowing, one borrowing $500 which, with his cash, equaled the $632 borrowed by the other. The improbability that they then agreed that both loans should be chargeable to the company is obvious. Moreover, the testimony shows that each copartner drew money from the concern, and groceries were sent to both women from time to time, to pay on interest. When the copartners took groceries they were charged to them by the bookkeeper and the accounts were adjusted when they drew out money. They kept books and the groceries sent to the women were charged up. It is by no means clear that this interest was paid equally on both debts or that it was not adjusted so that each was charged with the amount paid on his loan. The books were destroyed immediately after the business was sold, without any valid reason or excuse. We are of the opinion that these considerations, and others that we do not refer to, are not only inconsistent with the claim that the firm borrowed this money, but that they fairly outweigh the testimony of the defendants' witnesses upon the crucial point.

The decree is reversed, and a decree will be entered in this court in behalf of the complainant, as prayed in its bill, with costs of both courts.

GRANT, C. J., and MONTGOMERY, OSTRANDER, and CARPENTER, JJ., concurred.