Rice *v.* Barnard et al.

⟶⟶✺❋✺⟵⟵

GEORGE  W.  RICE  *v.*  JAMES  BARNARD,  ASAPH  FLETCHER  AND BUSHROD  W.  RICE.

IN CHANCERY.

Real estate, belonging to copartnership funds, should follow the same law of distribution, in a court of chancery, which is applied to personal property.

A court of chancery will not ordinarily interpose, to aid a creditor in reaching the real estate of his debtor, unless he have perfected his claim, so far as he can at law, by obtaining judgment and levying upon the estate.

The right of partnership creditors to claim a preference over the creditors of the individual members of the firm, in the distribution of the partnership property, is wholly dependent upon the right of the individual partners to enforce a lien upon the partnership funds for the payment of the partnership liabilities, before

Rice *v.* Barnard et al.

individual debts;—and if the *contract* of *copartnership* be of such a nature, that the copartners can enforce no such right, as between themselves, the partnership creditors can claim no such preference.

Where two individuals formed a copartnership, and put into the common stock all their property, both real and personal, except household furniture and apparel, and each contracted to apply himself with faithfulness and diligence to the management of the partnership business, and all liabilities of each were to be paid out of the partnership funds, and the business was so conducted for a number of years, each taking what he pleased for the support of himself and his family, without any account being kept of the amount so taken, and without any settlement between them, or any possibility of making one, it was held, that, instead of being strictly partners, they became *tenants in common* in all present and future possessions, and that, in such a state of things, the law would not imply a contract between the parties, that the partnership property should be first applied to pay the partnership debts, and that, consequently, the creditors of the partnership could claim no priority, in the distribution of the property, over those whose debts were not strictly due from both the partners.

APPEAL from the court of chancery. The orator alleged, in substance, that about the first of January, 1830, the defendants Fletcher and Rice entered into partnership, under the firm of *Fletcher & Rice*, for the purpose of transacting various kinds of business, and continued so to transact business until March 14, 1842, when they became insolvent; that while they were so doing business they became indebted to Hugh Henry in the sum of $2500, for money advanced to be used in the prosecution of their business, and executed a note therefor, which was also signed by the orator and one Simon Warren, as sureties; that in order to secure Warren, the firm, November 21, 1846, mortgaged to him certain real estate, which mortgage was not put upon record until January 25, 1832, and was afterwards foreclosed by Warren; that about the 20th of December, 1838, the firm, being also indebted to the orator, executed two promissory notes therefor, which were made payable to Jasper Strong, or bearer, but which always remained the property of the orator; that on the 10th day of March, 1842, the orator prayed out a writ of attachment upon these notes, in the name of Strong, and attached thereon the real estate of the firm, which was the same before mortgaged to Warren, and recovered a judgment in said suit, May Term, 1842, on which there remained due about the sum of

Rice *v.* Barnard et al.

$700, which there was no means of collecting, except from the real estate above mentioned; that about the tenth of May, 1841, the defendant Barnard preferred his bill in chancery against the defendant Fletcher, seeking to recover a large sum of money, and obtained a writ of sequestration, by virtue of which he sequestered the interest of Fletcher in the real estate of the firm of Fletcher & Rice, being an undivided half, and being the same estate previously mortgaged to Warren; that at the November Term, 1843, of the court of chancery Barnard obtained a decree, that Fletcher pay to him $1001,92, debt, and $56,40 costs,—which the orator averred was for a debt due from Fletcher individually; that this decree has not yet been satisfied; that the attachment made by the orator was subsequent to the mortgage to Warren and to the sequestration caused by Barnard; and that, if Barnard were allowed to satisfy his decree out of the real estate, there would be nothing left, from which the orator could obtain satisfaction of his judgment,—Fletcher and Rice being both insolvent. And the orator prayed, that Barnard might be enjoined from attempting in any manner to satisfy his decree against Fletcher out of the said real estate.

The bill was taken as confessed as to the defendants Fletcher and Rice. The defendant Barnard answered, referring the orator to his proof, as to so much as related to the firm of Fletcher & Rice, and their dealings with the orator, and alleging, that in 1834 Fletcher commenced two suits against Sylvester Edson, and caused the real estate of Edson to be attached therein; that Edson was indebted to this defendant in a large amount, and he commenced a suit against Edson, and attached his real estate, subject to the attachments made by Fletcher, and recovered judgment for $2180 damages; that Fletcher recovered judgment in his suits against Edson for about $2800, which included at least $900 more than was actually due to him from Edson; that Fletcher levied his executions upon the real estate of Edson, and disposed of the same, and invested the avails, including the $900, in the business of Fletcher & Rice; that by reason of Fletcher's thus taking judgment for more than was due to him, the security of Barnard, by his attachment, was diminished in the same amount; that the suit in chancery, referred to by the orator in the bill, was commenced by Barnard against Fletcher to recover that amount, and that he obtained the decree therein, alleged in the

61

bill; and he insisted, that he had good right, under the circumstances, to obtain satisfaction of that decree from the real estate, which he had caused to be sequestered.   This answer was traversed.

The contract of copartnership between Fletcher and Rice was given in evidence, which bore date January 1, 1830, and provided, that each partner should invest in the business of the firm all his real and personal property, except household furniture and apparel, and all demands due to him, and that they would engage in the business of trading in goods, wares and merchandize, and manage all business pertaining to the property invested, and that each should manage the same in a prudent and proper manner for the interest of the concern, and contribute equally to all expenses, and share equally in all profits, and that all debts due from them, or either of them, should be paid out of the partnership property, and that the partnership should continue during the pleasure of both parties.   Fletcher and Rice were both examined as witnesses on the part of the orator; and the substance of their testimony, as well as that of the other evidence in the case, is sufficiently detailed in the opinion of the court.

The court of chancery, May Term, 1847,—KELLOGG, Chancellor,—decreed, that the defendant Barnard be perpetually enjoined from levying his execution, obtained in his suit in chancery against Fletcher, upon any portion of the real estate of Fletcher & Rice, until the orator's judgment, recovered in the name of Strong, should be fully satisfied, and that Barnard pay the orator's costs.   From this decree Barnard appealed.

*Tracy & Converse* for orator.

That personal property, belonging to a partnership, is first liable to company debts is now well settled.   *Washburn et al.* v. *Bellows Falls Bank et.al.*, 19 Vt. 278.   That the same rule applies to real estate owned by a partnership seems equally clear.   1 Story's Eq. 623, § 674.   2 Ib. 490, § 1243.   *Sigourney* v. *Munn*, 7 Conn. 11. 3 Kent. 37.   Col. on Part. 68, n. 21.   Ib. 72, 76.   1 Ham. Ohio R. 535.   20 Maine 89.   *Lovejoy* v. *Bowers*, 11 N. H. 404.   Where, however, by agreement of the copartners the real estate is put in as company funds, there is no doubt, in any of the cases, but that it is subject to all the incidents of personal property.   7 Conn. 89.

*T. Hutchinson* and *E. Hutchinson* for defendant.

1. .Barnard had as good right to attach, as the orator; and his attachment being first in time, the court of chancery will not interfere, against his right. *Washburn et al.* v. *Bellows Falls Bank et al.,* 19 Vt. 278.

2. The orator alleges, that he has preserved the lien created by his attachment; and this is the only foundation for the claim for a decree in his favor. But it appears, that he has never levied his execution upon the real estate, and his lien expired long previous to the commencement of this suit.

3. The orator can have no lien upon any specific property of the partnership, unless by attachment and levy; and even then he could have only a temporary or *quasi* lien, to be perfected through the partners themselves. His only remedy, as a creditor of the partnership, was by obtaining a decree against the partners, compelling them to close the concern and pay him his portion of the partnership property. Gow on Part. 10, 46, 296. Story on Part. 470, 512. *Ex parte Williams,* 11 Ves. 5–8. 9 New Law Lib. 106. *Bardwell* v. *Perry et al.,* 19 Vt. 292. 1 Sumn. 181. *New York* v. *Mapes et al.,* 6 Johns. Ch. R. 46. *Henrick* v. *Robinson et al.,* 2 Ib. 283. Story on Cont. §§ 388, 390. And, as the orator claims through the partners, he must be governed by the articles of copartnership, as much as the partners themselves would be. Gow on Part. 9–11, 430. *Jackson* v. *Sedgwick,* 1 Swanst. 460. 11 Ves. 5. *Ex parte Peel,* 6 Ves. 602.

4. But the real estate in question was liable for the separate debts of the partners, and especially for the debt of Barnard against Fletcher. The articles of copartnership, in express terms, make all the property as fully liable for the private debts of each partner, as for the partnership debts. The orator claims, that he dealt with Fletcher and Rice as partners, and he must be presumed to have known the terms of their partnership. The evidence shows, that the partners managed their business for years in exact accordance with this construction, applying the property to the payment of separate and partnership debts indiscriminately. Fletcher, by his fraudulent judgment and levy and sale, deprived Barnard of his legal title to the land of Edson to the amount which Fletcher's judgment exceeded the debt actually due to him from Edson; but he could

not deprive him of his equitable lien upon the land, nor does his putting the avails of the land into the partnership fund have that effect. Those avails are in fact held by the firm in trust for Barnard, and not for the partnership creditors.

The opinion of the court was delivered by

REDFIELD, J. If this were the case of an ordinary copartnership, we should certainly be disposed to apply the same rule, in regard to real estate belonging to a partnership, which was applied to personal estate, in the case of *Washburn et al. v. Bank of Bellows Falls et al.,* 19 Vt. 278. It is not a subject which we have much examined, and we do not find it necessary to determine it at present; but no sound reason now occurs to us, why real estate belonging to copartnership funds should not follow the same law of distribution, in a court of chancery, which is applied to personal property.

But in our apprehension there are other more formidable difficulties in the way of the plaintiff's maintaining this bill. The acknowledged fact, that the plaintiff has not perfected his claim by levy upon the land, within the time which the statute requires, in order to perfect, or continue, his lien, seems very difficult to overcome; it is certainly uncommon for a court of equity to interfere in behalf of a creditor, until he has perfected his right, as far as it can be done, at law. It confessedly has never been customary, in that court, to interfere, until the plaintiff has established his claim, by judgment at law; or before any attachment of the property in dispute, where that can be made And an attachment, not followed up by a levy, so as to connect the levy with the attachment, is of no avail. An attachment, for some purposes certainly, creates no lien upon property, as against the debtor himself. It is of no use whatever, ordinarily, except as against subsequent purchasers, or incumbrancers. I speak of the attachment of real estate. The attaching creditor is not required to be made a party to a bill of foreclosure. To create any title to the land, it is surely necessary there should be a valid levy; and if it be desired to have that relate back to the attachment, it must be made within the prescribed time.

But the court are very clearly of opinion, that the present is not a case, where the partners themselves can be said to have any lien

upon the partnership funds, for the payment of the partnership lia-
bilities, before individual debts.    It seems to have been, as it is de-
nominated in argument, not strictly a partnership, but rather a uni-
versal hotchpot of all the property and liabilities, present and pros-
pective, of both the persons concerned.    Every particle of property,
both real and personal, (except furniture and apparel, in which cred-
itors have no interest,) is thrown into the common stock.    And so
are all the liabilities of the parties.  No express provision is made in
regard to future acquisitions, or future liabilities.    But the fact, that
each had divested himself of all present possessions, and had become
bound to apply himself with faithfulness and diligence to the man-
agement of the partnership concerns, leaves little ground to sup-
pose, that the parties could have expected any such thing as individ-
ual property, or liabilities.    The thing would seem impossible as
to future property, unless it came from bequests, gifts, or inherit-
ance, or were obtained by speculations or direct frauds,—both of
which would seem inconsistent with the probable expectation of the
parties at the time of forming this connection in business, which was
to swallow up all of their separate property, acquired before that
time, and all their future time.    Every other ground of obtaining
property seems to be within the scope of, and so absorbed by, the
partnership.

The practical construction, which the parties put upon this con-
tract, shows, that such was their understanding of the matter.  Both
partners and their families were supported from the concern, and no
account whatever kept against either; so that any thing like a set-
tlement between them would be impossible.    How, then, can it be
fairly said, that here is a pledge of all the partnership property, to
pay, first, the partnership debts, and that the share of each partner
is only in what remains, after all the partnership debts are paid?
An express promise to that effect would seem to contemplate the
utter exclusion of all separate creditors from collecting any debt
against either partner, and so might well be regarded as fraudulent.
We would not, then, imply any such contract, or pledge.    The
truth is, that the parties, by their very articles of compact, must have
contemplated a community of goods and of all other interests.    In-
stead of being strictly partners, they became, more strictly speaking,
tenants in common in all present and future possessions.    It would,

then, be unjust, to give joint creditors any preference over separate creditors in such a community of goods, as seems to have existed in the present case.

It is obvious, that the parties contemplated *no such thing;* else they would have kept accounts. When each wished to purchase for his individual benefit, or to pay individual debts, he did it, and must of necessity do it, with the common property; for he could do it with nothing else. This was done by each and acquiesced in by each, for twelve years, *until the concern became insolvent. At any moment* Fletcher had a perfect right to appropriate any portion of the common property for his individual use; and can a court of equity give the common creditors rights superior to those of the debtors themselves? We think it is sufficiently shown, that this can never be done, in the two cases upon this subject in the 19th Vt. 278, *et seq.* The rights of the joint creditors result from and are based upon those of the partners among themselves.

It is obvious, that such was the understanding of the parties to this general hotchpot of goods and lands; for the very money recovered of Edson, out of which the present controversy arose, and which *is shown, with the strictest, minutest detail of facts, was the indi*vidual concern of Fletcher,—almost all this money, except what was *paid back to Edson,* went directly into the common stock, as Fletcher is compelled, reluctantly it would seem, to admit. He says, it went in payment of money he had borrowed of the partnership. Indeed it could go no where else, unless Fletcher kept it apart from all his other property. And whether in payment of money he *had* borrowed, or *might* borrow thereafter, was rather an *inference* of the witness, than any clearly defined state of facts, I apprehend. The whole affair seems somewhat like a man's keeping a cash account with himself, or like borrowing out of his own pocket book. The scope of this partnership was so extensive, that we do not think it comes within any well defined rule of preference to be found in any of the English or American cases.

The decree of the chancellor is therefore reversed, and the case remanded, with instructions to the chancellor to dismiss the bill, with costs, and to make such farther orders in the premises, as may be necessary to perfect the rights of all parties concerned.