PATTERSON & Co. v. SEATON, SHERIFF.

1. **Fraudulent Conveyance of Chattels**: EVIDENCE TO PROVE. The evidence in this case (see opinion) *held* sufficient, on appeal, to justify the trial court in finding that a conveyance of a stock of goods by an insolvent firm to plaintiffs was in fraud of creditors, and that plaintiffs were participants in the fraud.

2. **Partnership**: FRAUD OF ONE PARTNER BINDS ALL. Each partner is chargeable with knowledge of any fraudulent act done by another partner in transacting business for the firm.

3. **Fraudulent Conveyance of Chattels**: FACTS CONSTITUTING. Where a stock of goods purchased by plaintiffs of an insolvent firm was partly paid for by canceling an individual debt of one of the selling partners, thus diverting firm property to the payment of the individual debt of such partner, held that this was a fraud upon the creditors of the insolvent firm, and invalidated the sale as to them. (See authorities cited in opinin.)

4. **Practice on Appeal**: ERRORS NOT ARGUED. Errors assigned but not argued are deemed to be waived, and will not be considered.

*Appeal from Linn Circuit Court.*

MONDAY, JUNE 21, 1886.

ACTION in replevin to recover the possession of a stock of goods and merchandise, seized and held by defendant, as sheriff, upon certain writs of attachment. The cause was tried without a jury, and judgment rendered for defendant. Plaintiffs appeal.

*Young & Smith* and *William G. Thompson*, for appellants.

*Frank C. Hormel* and *Davis & Brooks*, for appellee.

BECK, J.—I. The goods in controversy were seized by defendant as the property of Patterson & Smith, upon writs of attachment issued in actions brought against them in separate suits of many creditors. The plaintiffs claim property in the goods, and the right of possession thereof, under a

sale made by Patterson & Smith to them before the levy of the attachments. The defendant alleges in his answer to the petition that the sale under which plaintiffs claim the property is fraudulent and void, for the reason that it was made with the purpose on the part of Patterson & Smith to hinder, delay and defeat their creditors, and that this purpose and intention was shared by plaintiffs. Upon the issues joined in the case, involving the validity of the sale, the district court found for defendant, and rendered judgment accordingly.

II. The principal question in the case involves the sufficiency of the evidence to support the judgment of the district court. We are required, in deciding this

1. FRAUDU-LENT conveyance of chattels : evidence to prove.

question, to determine whether the district court, in the exercise of an honest and intelligent discretion, found the facts supporting the judgment. Unless the abstract upon which the cause is submitted to us shows such an absence of evidence supporting the judgment that a presumption thereon arises that the decision of the court below was the result of passion or prejudice, we are required to affirm the judgment. In our opinion, the decision finds sufficient support in the testimony before us.

The evidence shows that Patterson & Smith, at the time of the sale, were insolvent, owing largely more than the value of the property held by them. Among their creditors was A. C. Daniels, one of the plaintiffs, who had loaned them about $4,500. Two or three days before the sale, A. W. Patterson, the other plaintiff, who is a brother of John W. Patterson, of the firm of Patterson & Smith, appeared in Marion, where the firm and Daniels were both doing business, with claims against the firm and against his brother individually. The brother introduced him to Daniels. Thereupon A. W. Patterson and Daniels agreed to and did form a co-partnership for the purchase of the stock of goods held by the insolvent firm, paying therefor $11,200, by canceling the claims each held against the firm, and

against John W. Patterson individually. Daniels' claim was $4,500 against the firm. His interest in the new co-partnership was to that extent. A. W. Patterson held claims against the firm amounting to something over $2,500, and against his brother individually to over $1,400. The claims were canceled in payment for the stock, and A. W. Patterson gave his note for $2,100 to the firm, and paid, or agreed to pay, certain debts of the firm; the whole amount thus paid by him being $6,700, his interest in the partnership formed by himself and Daniels being to that extent. The goods were not invoiced, but were estimated to be worth $16,000. It was agreed between A. W. and his brother and Smith that the note of $2,100 was not to be paid, and that its existence should be concealed from the creditors of the firm of Patterson & Smith. This note afterwards came into the hands of Daniels, and was held by him to secure costs that might arise out of the transaction. The purpose of Patterson & Smith clearly appears to have been to protect the goods from the creditors of the firm, and enable the partners to effect a settlement of their debts. There is direct testimony to this effect, and rational presumptions point in the same direction. The evidence hardly warrants the conclusion that Daniels had knowledge of this purpose; but it is scarcely possible that he did not know that A. W. Patterson made payment for the goods purchased by the new firm partly by canceling the individual debt of his brother. But we need not pursue inquiry as to the knowledge and purpose of Daniels touching the transactions between the brothers.

III. The co-partnership between A. W. Patterson and Daniels existed in fact before the purchase of the goods by them. It was formed for that purpose, and it was agreed upon before the purchase, though probably the contract was reduced to writing afterwards, but on the same day. The purchase was the act of the firm; and each partner is chargeable with knowledge

2. PARTNER-
SHIP : fraud
of one part-
ner binds all.

of any fraudulent act done by the other in making the purchase. This proposition is substantially admitted by counsel for plaintiffs. But they insist that the partnership did not exist when the purchase was made, and therefore one partner was not affected by the acts of the other. But the evidence directly contradicts the position of counsel as to the fact upon which their conclusion is based; The case presents this state of facts: The goods were partly paid for by plaintiffs by canceling an individual debt of one of the partners selling them, thus diverting firm property to the payment of a personal debt of one of the partners. The firm being insolvent, this was an actual fraud upon its creditors, who held the legal right to demand the appropriation of all firm property to the payment of the firm debts. We conclude that the sale of the property must be held as fraudulent in fact. See, in support of this conclusion, the following cases: *Ferson v. Monroe*, 21 N. H., 462; *Wilson v. Robertson*, 21 N. Y., 587; *Ransom v. Van Deventer*, 41 Barb., 307.

3. FRAUDU-LENT convey-ance of chat-tels: facts constituting.

IV. Certain rulings of the court below upon the admission of evidence are made the foundation of assignments of error, which, however, are not argued by counsel. They are simply referred to in the argument by repeating, substantially, the statements of the assignment of errors. Objections thus raised, and not argued, are presumed to be waived, and demand no attention.

4. PRACTICE on appeal: errors not ar-gued.

It is our conclusion that the judgment of the district court ought to be

AFFIRMED.