J. M. HARPER, Appellant, v. FRANK BUDER, Appellee.

**Agency:** LIABILITY OF AGENT: EVIDENCE.

*Appeal from Des Moines District Court.*—HON. JAMES D. SMYTH, Judge.

SATURDAY, JANUARY 21, 1893.

ACTION by a principal against his agent to recover for losses sustained through the acts of the agent. The facts are stated in the opinion. —*Affirmed.*

*W. W. Dodge*, for appellant.

*La Monte Cowles* and *C. L. Poor*, for appellee.

KINNE, J.—I. The plaintiff claims that in February, 1890, he employed the defendant to act as manager of a meat market in Burlington, Iowa, and that he acted in that capacity until in October, 1890; that by the terms of his employment the defendant was to do a cash business only, and, if credits were extended, he was to be responsible to the plaintiff therefor, and the merchandise so sold was to be charged to the defendant. It is alleged that, in violation of his said agreement, the defendant

sold from April to June, 1890, meats and merchandise to the firm of Waddle & Chambers, and there is a balance of three hundred and thirty-seven dollars and thirty-nine cents due from them, which the defendant refuses to pay, and for which the plaintiff prays judgment. The defendant denies all the claims of the plaintiff, except the employment, and avers that said credit was extended with the knowledge and consent of the plaintiff. The cause was tried to the court, and judgment rendered against the plaintiff for costs, and he appeals.

II. The only question raised by this appeal is that the evidence does not support the judgment. The rule is well settled that we can not disturb the judgment of the court below where the evidence is conflicting, unless there is an absence of evidence to support it, so that the presumption might arise that the decision of the court was the result of passion or prejudice. *Hallam v. Haywood*, 21 Iowa, 398; *Woods v. Gevecke*, 28 Iowa, 561; *Patterson v. Seaton*, 70 Iowa, 690. Tested by this rule, was there sufficient evidence to support the judgment of the district court?

There is a hopeless conflict between the testimony of the parties to the action. The appellant, however, urges with much force, that the fact that one Carson, to whom the appellee had also sold meat on credit, testifies that he received a letter from the appellee, urging him to settle his account, and saying therein, "I am responsible for these accounts to J. M. Harper," corroborates the appellant's claim and testimony. In our judgment, such a statement would be as consistent with the defendant's claim as with the plaintiff's. Even though the defendant was not liable for sums due for meat sold on credit, still he was, in a certain sense, as the agent of the plaintiff, responsible to him for the conduct of the business. The words may well have been used in that sense, rather than as applying an absolute liability to the plaintiff.

Again, it is insisted that, because the defendant advanced some of his own money to the plaintiff, to apply on the account of Carson, it was an acknowledgment of the existence of the agreement as claimed by the plaintiff. It must be remembered, however, that prior to this time the plaintiff had, in his letters to the defendant, complained because the defendant had extended credit to Carson and others; and it appears that this advancement of fifty dollars by the defendant was prompted by these complaints, as well as by his desire to keep the plaintiff's confidence and good will. Nearly all the letters written by the plaintiff to the defendant sustain the defendant's contention, or at least fail to support the plaintiff's theory. Under date of May 29, 1890, the plaintiff writes the defendant: "I also notice you are carrying customers to the amount of nine hundred dollars ($900)—one party owing three hundred and nine dollars and ninety-nine cents ($309.99); and one, one hundred and seventy-three dollars and sixty-two cents ($173.62); one, ninety-nine dollars and thirty-three cents ($99.33); and another sixty-two dollars and forty-six cents ($62.46). Why is this? This is more credit than I am giving here on four times the business. It seems to me there is too much out. I do not want one dollar's worth of goods sold on credit where there is the slightest possibility of their not paying, and promptly, too.

I have written you about this often, and trust instructions have been followed." July 7, 1890, the plaintiff in a letter complained because Waddle & Chambers had not reduced their account; says he wants it collected; that it "has run altogether too long." He also complains that Carson's bill, of one hundred and ninety dollars and fifty-three cents, "seems a pretty big bill, also." August 12, 1890, the plaintiff writes: "You had positive instructions from me, when you first went over there, and not trust any one who was not perfectly responsible, and of whom you could not get your money any day; and no one was to have a longer credit than one week on one bill, and that to be paid before he got another. * * * If you have sold goods to irresponsible parties, you should stand the loss, if any. If I did not follow instructions of my house, would be held on everything." July 30, 1890, the plaintiff complains because the defendant is not collecting in the accounts, and because he extended credit to parties who were not prompt pay. August 8, 1890, the plaintiff complains that the statement shows one thousand, two hundred dollars outstanding; says the defendant has often told him these accounts were good; also, "I must look to you for them, and see they are paid promptly." August 19, 1890, the plaintiff complains because the Waddle & Chambers account still runs. September 5, 1890, he says he is getting tired of the expenses, and that "I wrote you some days ago, asking you to send me a draft for the Waddle & Chambers account, and you carry it until it was paid. Can't you do this?" September 25, 1890, he writes, wanting the accounts collected at once; that he "wants the money, and must have it." There are other letters of the same tenor.

It will be seen that in none of these letters does plaintiff claim that defendant is liable to him for these outstanding accounts by reason of any agreement whatever. True, he says the defendant "should stand the loss," and that he "must look to you for them, and see they are promptly paid," and that he wanted defendant to advance the amount of the Waddle & Chambers account, and wait on them for his pay. Clearly, these are not the kind of letters the plaintiff would have written to the defendant if he believed defendant was bound to pay him the amount of all outstanding accounts. They do not impress us as supporting any such theory. There is also the undisputed testimony of the defendant that his compensation when he worked for the plaintiff at Peoria, before coming to Burlington, was just the same as it is conceded he received for his Burlington work. This, of itself, is a circumstance against the plaintiff's claim, as it would not be natural that defendant should give up a job where he was receiving one hundred dollars per month, and without personal liability for bad debts, to accept a position in a distant city at the same compensation, and at the same time become liable to pay the plaintiff for all meat sold which was not paid for by the purchasers.

We are satisfied that the evidence is ample to justify the judgment of the district court, and it will be AFFIRMED.