JACKSON BANK *v.* R. W. DURFEY ET AL.

1. PARTNERSHIP.  *Appropriation of assets to individual debts.  Insolvency.*

The members of an insolvent partnership cannot lawfully convert the joint estate into severalty, and appropriate it to their individual debts to prevent its subjection by firm creditors, or where, to do so will inevitably leave them unpaid.

2. SAME.  *Equity of firm creditors.  Case.*

While creditors of a partnership have no lien on its assets, and while the partners, so long as the firm is a solvent and "going" concern, may use firm assets to pay individual debts, where the partners, themselves insolvent, execute trust-deeds conveying their respective interests in certain firm assets to secure their individual debts when the firm is insolvent, or when there is no reasonable ground to expect that, after the property is so applied the firm debts can be paid, the trust-deeds are fraudulent as to existing firm creditors.  *Hanover Bank* v. *Klein*, 64 Miss., 141, criticised.

FROM the chancery court of the first district of Hinds county.
HON. H. C. CONN, Chancellor.
The opinion sufficiently states the case.

*Nugent & Mc Willie,* for appellant.

The evidence leaves no doubt that the firm of Durfey & Ascher, and both its members, were insolvent. They were unable to pay their debts in the ordinary course of business. 159 Mass., 363; 72 Me., 489; 2 Am. & Eng. Enc. L., 172.

It was not allowable for each member of the firm, while insolvent as a firm and as individuals, to give a trust-deed on his individual half interest in the firm assets to secure his individual debts. See *Williams* v. *Gage,* 49 Miss., 777; *Bass* v. *Estill,* 50 *Ib.,* 300; *Irby* v. *Graham,* 46 *Ib.,* 425. In *Schmidlapp* v. *Currie,* 55 Miss., 597, a conveyance was upheld, the court saying that there was no showing made of insolvency at the time. The utterance of the court in *Bank* v. *Klein,* 64 Miss., 141, that insolvency would make no difference, is *obiter dictum.* The cases of *Case* v. *Beauregard* and *Roach* v. *Brannon,* relied on by appellee, are inapplicable. See, also, *Marks* v. *Bradley,* 69 Miss., 1.

There is no lack of authority to sustain the proposition that a transfer of the assets of an insolvent firm, or any member of it, to pay individual debts, is fraudulent in law, and fraudulent in fact, when coupled with proof of insolvency. 84 Iowa, 671; 45 N. J. Eq., 186; 106 Mo., 365; 13 Col., 329; 52 Ark., 556; 21 N. H., 462; 52 N. Y., 146; 101 *Ib.,* 265; 33 W. Va., 246; 15 Neb., 73; 29 Md., 311; 1 Jones on Mort., § 120; 114 Pa. St., 353; 60 Wis., 622; 80 Ala., 440.

*Williamson & Potter,* for appellee.

1. The proof wholly fails to support the charge that the trust-deeds were executed with intent to defraud. It is not disputed that the debts were in each case valid, and that the money borrowed went into the partnership. It purchased the property which the partners put into the firm when the partnership was formed. The bank officials knew of the existence of these debts, and, when the debt of the bank was contracted,

Durfey & Ascher were in possession of all the property. There was no effort at concealment.

2. Appellant's contention is that it is not competent for a member of a firm to mortgage his interest in firm assets for individual debts. It has been uniformly held by our court that firm creditors have no lien on firm assets, and that a member of the firm can, with the consent of other members of the firm, apply firm assets to individual debts. Freem. Ch. Rep., 231; 41 Miss., 138; *Schmidlapp* v. *Currie*, 55 *Ib.*, 597; *Bank* v. *Klein*, 64 *Ib.*, 141. The same doctrine is held in other states. *Sigler* v. *Bank*, 8 Ohio St., 511; 5 *Ib.*, 96; 11 Ohio, 394; *Case* v. *Beauregard*, 99 U. S., 119; 34 Kan., 35; 21 Conn., 130; 49 Wis., 379; 20 Tex., 688; 17 Ind., 463; 17 Am. & Eng. Enc. L., 971; 5 Johns. Ch., 320. The solvency or insolvency of the firm or the partners makes no difference. *Bank* v. *Klein*, *supra;* 21 Conn., 130; 5 Ohio St., 96.

*E. E. Baldwin*, on the same side.

The giving of the trust-deeds by the partners on their respective interest in the firm property was not unlawful. *Whitton* v. *Smith*, Freem. Ch. R., 231; *Freeman* v. *Stewart*, 41 Miss., 138; *Schmedlapp* v. *Currie*, 55 *Ib.*, 597; *Bank* v. *Klein*, 64 *Ib.*, 141; 34 Kan., 35; 8 Ohio St., 511; *Case* v. *Beauregard*, 99 U. S., 119; 21 Conn., 130; 49 Wis., 379; 20 Tex., 688; 17 Ind., 463; 4 Jones (N. C.), 58. The cases all start out on the principle laid down by Lord Eldon in *Ex parte Williams*, 11 Ves., 3, and repeated in *Ex parte Ruffin*, 6 *Ib.*, 119, that the equity of the creditors is merely that of the partners, and if they consent to the application of the firm assets to pay *bona fide* debts either of the firm or of the individuals, the firm creditors have no equity to enforce.

Where, as in this case, the partners make, at different times, sale of their respective interests in certain partnership property, with intent to pass the whole property, it is, in effect, a conversion of partnership into individual assets, and the rights

of firm creditors are gone.   5 Johns. Ch., 320; 13 Metc. (Mass.), 283.

Argued orally by *T. A. McWillie* and *W. L. Nugent*, for appellant, and *C. M. Williamson* and *E. E. Baldwin*, for appellees.

COOPER, C. J., delivered the opinion of the court.

The appellant, a firm creditor of the appellees, Durfey & Ascher, exhibited its bill in chancery, seeking to annul as fraudulent two certain deeds of trust, whereby the firm assets were incumbered to secure the individual debts of the partners.   The evidence, fairly construed, discloses these facts: Durfey, one of the partners, was indebted to the defendant, Caldwell, in the sum of five thousand dollars, and Ascher, the other partner, was indebted to Hart in the sum of five thousand five hundred and fifty dollars.   The firm, and the individuals composing it, were insolvent.   On October 3, 1893, Durfey executed a deed of trust on all property owned by him individually, and upon his undivided half interest in certain property, specifically described, owned by the firm, to secure the debt due by him to Caldwell.   On the same day Ascher executed a deed of trust, conveying his individual property and his undivided half interest in certain property specifically described, owned by the firm, to secure the debt due by him to Hart.   The book accounts, and certain horses which had been bought for resale, were not included in the conveyances, but the stock kept in livery, the carriages, feed and other appurtenances were all incumbered.   Forfeiture of both conveyances was fixed for the same date, January 1 following, at which time, the secured debts remaining unpaid, the trustees were authorized and directed to make sale of the mortgaged property, and out of its proceeds to pay the secured debts.   The members of the firm testified that they expected, by the collection of the outstanding book accounts, by the sale of the stock not included in the

deeds and from the profits of the business, to pay the firm debts, but a careful consideration of the evidence satisfies us that, at the time the deeds were executed, the firm and its members were hopelessly insolvent, and that no expectation could reasonably have been entertained that the firm debts could be paid after the firm property had been devoted to the individual debts of the partners. What followed the execution of the deeds was, at best, the struggle of mere hoping against hope and postponing for a short time the inevitable end. The issue is thus sharply presented whether it is lawful for the members of an insolvent firm to convert the joint estate into severalty and appropriate it to the payment of the individual debts of its members, leaving the firm debts unpaid. The question has never, so far as we are advised, been before the court, though expressions may be found suggestive of the inclination of some of the judges who have been members of the court, to the view that the dominion of the partners over firm property is not limited by the existence of firm debts and the insolvency of the firm.

In *Schmidlapp* v. *Currie*, 55 Miss., 597, a case of a solvent firm, Judge Chalmers, while carefully limiting the decision to the question involved—*i. e.*, the right of a solvent firm to devote firm assets to the payment of the debts of one of the members—cites with apparent approval the cases of *Rice* v. *Barnard*, 20 Vt., 479; *Bank* v. *Sprague*, 20 N. J. Eq., 13; *Alten* v. *Center Valley Co.*, 21 Conn., 130, and *Sigler* v. *Bank*, 8 Ohio St., 511, which clearly hold that an insolvent firm may devote firm assets to the debts of its individual members; and, also, *Whitton* v. *Smith*, Freeman's Ch. R. (Miss.), 231; *Freeman* v. *Stewart*, 41 Miss., 138; *Carter* v. *Beaman*, 6 Jones' L. (N. C.), 44; *Ex parte Ruffin*, 6 Ves., 119; *Campbell* v. *Mullett*, 2 Swan's Ch., 553, which are sometimes cited as supporting the same view. In *Hanover Bank* v. *Klein*, 64 Miss., 141, it was sought by the creditors of a banking firm to subject to their demands the proceeds of insurance policies upon the life of

one of the members in favor of his wife, the premiums on which the bill averred had been paid with firm money while the firm was insolvent. The answer denied the insolvency of the firm at the times the premiums were paid, and there was no evidence on the point. The case was decided on this point. Judge Arnold, however, in delivering the opinion of the court, gave expression to an emphatic dictum that the insolvency of the firm and its members would not have changed the result. In addition to the cases cited by Judge Chalmers in *Schmidlapp* v. *Currie,* he referred to the cases of *Case* v. *Beauregard,* 99 U. S., 119, and *Roach* v. *Brannon,* 57 Miss., 490.

In neither *Whitton* v. *Smith,* 1 Freem. Ch.; *Freeman* v. *Stewart,* 41 Miss.; *Roach* v. *Brannon,* 57 Miss.; *Schmidlapp* v. *Currie,* 55 Miss., nor *Bank* v. *Klein,* 64 Miss., was the question now involved presented for decision. In all of them the nature of the right of partnership creditors to resort to firm assets for the satisfaction of their demands was considered, and the decisions in the cases in which the point was involved were that the right, being a derivative one, and resting on the rights of the partners, had been lost by the waiver of the partners, under the circumstances of the particular cases. The question involved is *res nova* in this state, and we deal with it as such. The authorities, with practical uniformity, agree that the right of partnership creditors to have the partnership property applied to the payment of partnership debts is a derivative one, resting upon the equities of the partners as between each other. The conflict of decision arises with the question, whether the partners may, by convention, waive their rights and convert the joint estate into severalty, thus subjecting it to the debts of the individual members, or, by direct appropriation, apply the joint estate to such debts. It is quite generally held that this may be done, so long as the partnership is a solvent and going concern. Some courts seem to hold that, if the partnership, though insolvent, is yet engaged in the prosecution of its business, it may thus deal with the partnership estate,

and others that this may be done even though the partnership is insolvent, contemplates dissolution and converts the joint into separate estates for the purpose of applying it to the individual debts of its members. In *Case* v. *Beauregard*, 99 U. S., 119, the individual members of an insolvent firm had applied all the partnership property to the payment of their respective individual debts. The firm's creditors sought to subject it to their demands, but relief was denied, upon the ground that the right of firm creditors was a derivative one, and could not be enforced, except so long as the partners themselves retained their lien upon the property. Speaking on the precise point, the court said: "The bill, it is true, charges that the several transfers of the partners was illegal and fraudulent, without specifying wherein the fraud consisted. The charge seems to be only a legal conclusion from the fact that some of the transfers were made for the payment of the private debts of the assignors. Conceding such to have been the case, it was a fraud upon the other partners, if a fraud at all, rather than upon the joint creditors—a fraud which those partners could waive, and which was subsequently waived by the act of fusion." The clear effect of this decision is, that it is not a fraud upon partnership creditors for an insolvent firm to devote the joint estate to the payment of the separate debts of the partners, leaving no provision for firm creditors.

In no other case we have seen has the question been presented where the conversion of the whole assets into separate estates, or the devotion of all of them to individual debts, was involved. The reasoning of other courts, however, in the following cases, would seem to conduct to the same conclusion as that reached in *Case* v. *Beauregard*, viz.: *Sigler* v. *Bank*, 8 Ohio St., 511; *Rice* v. *Barnard*, 20 Vt., 479; *Allen* v. *Center Valley Co.*, 21 Conn., 130; *Winslow* v. *Wallace*, 116 Ind., 317; *People* v. *Farrington* (Ind.), 4 Law. Rep. Ann., 535; *Fletcher* v. *Sharpe* (Ind.), 1 Law. Rep. Ann., 179. See, also, other cases probably holding to the same effect, cited in notes to § 560, 1 Bates on Partnership.

But the decided weight of authority is that, while the right of firm creditors to go against the firm property in postponement of the right of the creditors of the individual members is a derivative right, and rests on the right of the members of the firm, and while that right is lost by the *bona fide* waiver of their rights by the partners, it is not lawful for the members of the firm, in contemplation of insolvency, to divert the firm property and apply it to the payment of the debts of the individual members, or to convert the joint estate into estates in severalty, to prevent its being subjected by firm creditors. *Ex parte Mayou*, 4 DeG., J. & S., 663; *Ex parte Snowball*, L. R., 7 Ch. App. Cas., 534; *Crow* v. *Crow*, 56 Mich., 8; *Cribb* v. *Morse*, 77 Wis., 322; *Willis* v. *Brenner*, 60 *Ib.*, 622; *Menagh* v. *Whitwell*, 52 N. Y., 146; *Phelps* v. *McNerly*, 66 Mo., 554; *Reyburn* v. *Mitchell*, 106 *Ib.*, 365; *Roop* v. *Herron*, 15 Neb., 73; *Arnold* v. *Hagerman*, 45 N. J. Eq., 186; *Darby* v. *Gillighan*, 33 W. Va., 276; *Shackleford* v. *Shackleford*, 32 Gratt. (Va.), 481; *Bank* v. *Sprague*, 21 N. J. Eq., 530; *French* v. *Lovejoy*, 12 N. H., 458; *Flack* v. *Charron*, 29 Mo., 311; *Clement* v. *Jessop*, 36 N. J. Eq., 569; *Elliott* v. *Stevens*, 38 N. H., 311; *Gallagher's Appeal*, 114 Pa. St., 353; *Patterson* v. *Seaton*, 70 Iowa, 689; Parsons on Principles of Partnership, § 106; Bates on Partnership, § 563; Jones on Mortg., § 120; Beach on Modern Eq., §§ 787, 788; Horr & Wallace's note to *Silk* v. *Prime*, Ldg. Cas. in Eq., vol. 11, part 1, 353. The principle controlling in these cases is stated with precision by Judge Dixon delivering the opinion of the court in *Arnold* v. *Hagerman*, 45 N. J. Eq., 186 (14 Am. St. R., 712). We quote from that opinion at large, as we adopt and approve the reasoning of the court: "In equity a partnership is, for some purposes, deemed a single entity. Thus, where partnership property invested in the business of a partnership, is to be applied by a court of equity to the payment of debts, that property is treated as belonging, not to the persons composing the firm, but to a distinct debtor, the partnership,

and is used, first, to liquidate the debts contracted in the busi-
ness of that debtor, and only the surplus, if any, is surrendered
to the individual partners.    This equitable practice rests upon the
presumed intentions of the partners themselves, and hence is pri-
marily considered as their equitable right against each other.
Consequently, since the decision of Lord Eldon in *Ex parte Ruf-
fin*, 6 Ves., 119, it has been generally held that the partners could
put an end to this right, and that if, by their agreement, the
partnership is dissolved and its property is assigned to one of
their number, or to a stranger, as his own, without reserva-
tion of the right, the right to have partnership debts paid
out of that property is extinct.  .  .   Growing out of this right
of partners has arisen a corresponding equity in partnership
creditors to have their debts first satisfied out of the firm prop-
erty, which is now deemed a substantial element of their de-
mands.    Generally, it may be said that this equity of creditors
continues only so long as the right of the partners against each
other subsists, and perishes when that terminates; but this is
not universally true, for this equity may survive the right to
which it is ordinarily attached.    In this respect it resembles
the claim which the general creditors of an individual have
upon his property.    It is neither an estate nor a lien.    It is,
ordinarily, but a right by lawful procedure to acquire a lien
during the ownership of the debtor, yet, under certain circum-
stances, that lien may be acquired after the debtor's ownership
has ended.    This results from the provisions of the ancient
statute for the prevention of frauds and perjuries, by force of
which, when a person has aliened his property with intent to
hinder, delay or defraud his creditors, the rights of those cred-
itors remain as if no alienation had taken place, except against
the claims of *bona fide* purchasers, for good consideration,
without notice.

" Equity applies this statute to . a partnership, its property
and creditors, just as it would in the case of an individual; and,
therefore, while it is generally true that a partnership may de-

feat the equity of its creditors by the alienation of its property
and consequent extinguishment of the right of its partners *inter
sese*, yet, if the alienation be effected with intent to hinder, de-
lay or defraud the firm creditors by defeating their equity, the
claims of creditors will be unimpaired, and the property will
be treated as partnership assets, unless it shall have passed into
the hands of those whom the statute protects."

In *Clements* v. *Jessops*, 36 N. J. Eq., 569, it was said:
"Partnership creditors in equity have an inherent priority of
claim upon partnership property over individual creditors, and
a transfer of partnership property by one partner, with the
consent of the other partners, or by all the partners, to pay in-
dividual debts, is fraudulent and void as to firm creditors, un-
less the firm was then solvent, and had sufficient property re-
maining to pay the partnership debts."

The recognition of this equity in favor of firm creditors does
not impair any proper exercise of the power of the partnership
over its property or affairs, nor bring within the control of a court
of equity all partnerships which are insolvent in fact, or in a con-
dition of temporary inability to meet their obligations. The
apprehension of this result seems to have been influential in lead-
ing the court, in *Sigler* v. *The Bank*, 8 Ohio St., 511, to adopt
the opposing view; but the statute against fraudulent convey-
ances does not operate to control the lawful dominion of indi-
viduals, though insolvent, over their property, nor does mere
insolvency confer jurisdiction upon equity to take charge of
and administer their estates; and yet it cannot be denied that
the statute does restrain the insolvent from disposing of his es-
tate for the purpose of withdrawing it from liability to his
creditors. Why should a different rule be applied to an aggre-
gation of individuals than to them separately? The inquiry
must, in either case, be whether the purpose and effect of the
act is lawful or forbidden. If lawful, it may be done by the
individual, or by a firm; if unlawful, the act is equally void
as to the creditor injured, whether it be done by the one or the

other; but it is again said that it cannot be a fraud for one to devote whatever right or property he has to the payment of an honest debt.    This is true if one devotes his own property to his own debts, but is it not a fraud in law if *A* appropriates his property to pay *B's* debt, leaving his own creditors unpaid? Take the case at bar.    Durfey and Ascher appropriate one-half of their joint estate to pay Ascher's debt.    Now, if this was all that had been done it would be manifest that the creditors of Durfey could treat the conveyance as fraudulent, because it would have been a clear donation by Durfey to the creditors of Ascher, at the expense of his creditors, he being insolvent.    But it is said that Ascher, at the same time, conveyed his interest in the other half of the joint estate to the creditors of Durfey, and so each conveyance became a consideration of the other, and each partner received a full consideration for his release of his right as a partner.    The reply is that a full consideration does not make a contract, otherwise unlawful, valid.    If *A* agrees to do one unlawful act if *B* will do another, of what avail is it that each will reap a benefit from such act of the other?    Durfey had a right to have the partnership property applied to the partnership debts, and Ascher had a like right.    While these reciprocal rights existed, they were of value as property rights of the debtors to a certain class of creditors—*i. e.*, firm creditors.    Now, it is manifest, that for the very purpose of preventing these creditors from resorting to these rights for the satisfaction of their demands, the rights themselves were waived, and attempted to be obliterated.    We are unable to perceive any just principle upon which the right of a debtor can be recognized to thus deal with his estate for the very purpose of obstructing his creditors.

It is to be noted, also, that neither partner could make a cent by the transaction.    Five thousand dollars' worth of property will pay only five thousand dollars of debts, whether its proceeds be applied to partnership or individual liabilities.    The partners would, in either event, after the payment of debts

of either class, owe precisely the same sums.   To permit the consummation of the scheme would be of no benefit to them. Its sole effect would be to withdraw the property from one class of creditors who had created the joint estate, had given credit on the faith of it, and had a right to resort to it, and to permit its appropriation to another class, who dealt with the individuals composing the firm with a full knowledge that all they could get out of the partnership assets was what remained after payment of the partnership debts.   The complainant is entitled to the relief prayed by its bill.

*The decree is reversed and cause remanded.*