Howard, J.
The appellees, William Thomas and Jeremiah S. Grist, were partners, under the firm name of Thomas & Grist, and as such engaged in the retail furniture business. On December 19, 1894, the partners were owing the appellants, firm • creditors, for goods purchased, about $4,000. At the same date they were individually indebted to the remaining appellees, in various sums, aggregating $7,955.48. The partners had, about two years before, gone into business on borrowed capital, and their individual indebtedness was for money borrowed and put into their business. At the date mentioned they gave the firm note to their co-appellees for the full amount, $7,955.48, so due by them as individuals, and secured the same by a chattel mortgage on all their firm property. The firm was then insolvent, and the partners, individually, were also insolvent, and had no property left subject to execution, except that one of them had á small piece of property mortgaged for its full value.
On December 26,1894, Thomas & Grist made a general assignment for the benefit of their creditors, naming the appellee, Thompson F. Thomas, as assignee.
This action was brought by the firm creditors to cancel and set aside the note for $7,955.48, and the *313 chattel mortgage given to secure the same; and also asking the court to require Thompson F. Thomas, as assignee of the firm, to take charge of all firm assets and administer the same for the general benefit of all the Iona fide creditors.
The court, on hearing the evidence, found against the firm creditors, and gave the appellees judgment for costs. It is assigned as error that the court overruled the several motions for a new trial.
We have read the evidence carefully, and are satisfied that it sustains the finding and judgment of the court.
The individual debts of the partners, for which the note and mortgage in suit were given, were almost wholly for money borrowed by them and put into the business of the partnership. The equities in favor of those debts were, therefore, quite as strong as those in favor of the firm debts due the appellants. The note was made in favor of the three sureties on the individual notes that had been given from time to time by the partners for money that had so gone into the firm business.
It is well settled that the liability of a surety to pay the debt of another is sufficient consideration for a note and mortgage given such surety to indemnify him for such liability.
In Mayer v. Grottendick, 68 Ind. 1, it was said, citing 2 Hilliard Mortgages, 366, “A liability to pay the debt of another, upon a subsisting contract, is sufficient consideration for a mortgage or pledge to the party thus liable; and the validity of the transaction does not depend upon the comparative amount of the consideration and of the property conveyed.”
In 1 Brandt Suretyship (2d ed.), section 218, the rule is stated as follows: “The liability of a surety or guarantor for the debt of his principal before he has *314 made any payment on account thereof is a sufficient consideration for the execution of a mortgage or trust deed for his indemnity, and such mortgage or trust deed will take precedence of any subsequent lien on the property incumbered thereby.” And in the same connection it is shown that the rule also obtains as to a promissory note given to indemnify the payee against his liability as surety, even though such surety, at that time, has not been damnified. ' This, too, where the surety has expressly promised the principal to pay the debt; citing Haseltine v. Guild, 11 N. H. 390, and Gladwin v. Garrison, 18 Cal. 330. See further as to indemnifying sureties: Walling v. Lewis, 119 Ind. 496; Collins v. State, 3 Ind. App. 542; 1 Jones’ Mortgages, sections 379, 384; 10 Am. and Eng. Ency. of Law, 402, and following, and cases cited in notes
Neither is it a valid objection to the mortgage that it includes security for debts due to the sureties themselves. The only difference this makes is that the debts for which the sureties are liable, and for which the mortgage was given by way of indemnity, must first be paid. The rule, as stated in 1 Jones’ Mortgages (3rd ed.), section 385, is: “If the mortgage to the surety include a debt due to himself, as well as the debt for which he is liable as surety, as between himself and the principal creditor, the latter is entitled to be first paid out of the proceeds of the mortgage, on the ground that such mortgagee is a quasi trustee for the creditor in respect of the indemnity thus obtained.” In the case before us, the principal debtors, the individual partners, being insolvent, the rights of the several creditors, under the indemnifying mortgage, at once accrued, pro rata, and took precedence even of the claims of the sureties themselves. Jones’ Mortgages, section 387. That the consideration in this case was *315 sufficient, see further, 15 Am. and Eng. Ency. of Law, 753, 758, and notes.
It is said that the mortgage, if good for any purpose, ought to have been given to secure the original notes directly, inasmuch as such notes are still left outstanding, and the new note is but the sum of the amounts of the several notes first given by the partners. But in addition to what we have said in relation to the mortgage as given to indemnify the sureties on the original notes, we may observe, further, that a mortgage, strictly speaking, does not secure the note or other evidence of debt, but the debt itself; and no matter what changes may be made in the form of the evidence of indebtedness, the mortgage still remains good as security for the debt. And if the mortgage does not sufficiently identify the debt, this may be done in the complaint, or other proper pleading, and by the proof supporting the same, as was done in this case. “It has been many times decided,” as said in Bodkin v. Merit, 86 Ind. 560, “that a mortgage stands for the debt, although there may be many changes in the forms of the evidence of indebtedness, and that notes given in renewal of the original note or notes are covered by the mortgage, and that it remains as a security for the latter. Mayer v. Grottendick, 68 Ind. 1; McCormick v. Digby, 8 Blackf. 99; Cissna v. Haines, 18 Ind. 496; Dumell v. Terstegge, 23 Ind. 397. A good statement of the law is that of Mr. Jones, who says: ‘No change in the form of the indebtedness or in the mode or time of payment will discharge the mortgage. A mortgage secures a debt, and not the note or bond, or other evidence of it.’ 2 Jones’ Mort., section 924.”
But the principal argument of counsel for appellants is, that the mortgage is invalid for the reason that it was given to secure the individual debts of the *316 partners as against the debts dne by the firm; that the goods mortgaged, being partnership property, equity requires that the partnership debts be first paid, the surplus alone, if any, being available for the payment of the individual debts of the partners. There is no question that this is the equitable rule, and that in case the firm property is in the hands of a court for distribution to creditors, such rule will be followed in the payment of debts. But the law does not forbid an individual, a corporation, or a partnership, so long as either remains in control of his or its property, to prefer one Iona fide creditor to another; and such good faith preference may, therefore, be always made. Whether such law is just, is not for the courts to say. So long as it is the law the courts must so declare. If the people wish to change the law, and forbid such preferences, they may, of course, do so through their representatives in the legislature. Wyeth, etc., Co. v. James Spencer, etc., Co. (Utah), 47 Pac. 604 (13 Nat’l Corp. Rep. 534; Id 14, 12). But until such change is made, if ever, a failing debtor may pay any honest debts he may be able to pay, so far as the property in his hands, subject to execution, will enable him to do so. It is only after the debtor’s property passes into the custody of the court that the equitable rule contended for by counsel will be enforced.
“It is settled everywhere,” said Judge Mitchell, in Winslow v. Wallace, 116 Ind. 317, “that where the assets of a partnership, or the individual property of the members of a firm, are brought under the jurisdiction of a court for judicial administration, the equitable rule of distribution will be applied, and the partnership assets will be devoted, first to the payment of the firm’s debts, and the individual property of the several partners to their individual debts, respectively. But where the partnership assets remain under the control *317 of the partners, they have the power to appropriate any portion of it to pay or secure the individual debts of the members of the firm. Thus, in Fisher v. Syfers, 109 Ind. 514, this court said: ‘Where debts are fairly owing by either partner individually, the mere preference of individual over partnership creditors by the execution of a chattel mortgage, in the firm name, or by authority of the partners, upon the property of the firm, is not of itself such a fraud upon the partnership-creditors as will authorize the setting aside of the chattel mortgage at the suit of a creditor. Nat. Bank, etc., v. Sprague, 20 N. J. Eq. 13; Kirby v. Schoonmaker, 3 Barb. Ch. 46; Kennedy v. Nat’l Union Bank, 23 Hun. 494; Jones Chat. Mort., section 44; In re Kakley, 2 Biss. 383.’ ”
So in the same decision it is said: “The rule that obtains in the distribution of the estates of partners, and under which partnership creditors are entitled to priority of payment out of the partnership assets, is an equitable doctrine for the benefit and protection of the partners respectively. ‘Partnership creditors have no lien upon partnership property; their right to priority of payment out of the firm assets, over the individual creditors, is always worked out through the lien of the partners.’ Warren v. Farmer, 100 Ind. 593; Trentman v. Swartzell, 85 Ind. 443. Upon the death of one partner, or where the firm becomes bankrupt, or where the partnership assets are' being administered by a court, the rule of equitable distribution is applicable to its fullest extent* Where, however, the partners have possession and control of their own property, they have the right to make any honest disposition of it they see fit; each has the right to waive his equitable lien, and together they may sell, assign or mortgage the property of the firm, to pay or secure0 either an *318 individual debt of one of the partners, or the debts of the firm.”
To the same effect is the following, by Olds, J., in Goudy v. Werbe, 117 Ind. 154, cited and approved in Purple v. Farrington, 119 Ind. 164: “The true doctrine is, that the property of the partners is their joint property, and they may sell and dispose of the same in good faith as they deem proper, and as held in the case of Fisher v. Syfers, supra, they have the right to prefer creditors, and even may, if all the partners consent to do so, dispose of the property to satisfy the individual debt of one of the partners, which would operate to decrease the assets of the firm and to the detriment of the firm creditors, yet, nevertheless, they have such right to secure or pay the bona fide debt of one of the other partners.”
Like holdings were cited and approved in Elliott v. Pontius, 136 Ind. 641; Henderson v. Indiana Trust Co., 143 Ind. 561; Morgan v. Worden, 145 Ind. 600.
Counsel for appellants rely with confidence upon Jackson Bank v. Durfey, 72 Miss. 971, 48 Am. St. 596, 18 South, 456, a well considered case, in which, while admitting that partners may devote the firm assets to the payment of their own individual debts, so long as the firm is solvent, the court denies that this may be done after the firm has become unable to pay all its debts, partnership and individual, even though the partners still retain control of the firm property. There is no doubt that this holding is correct, in case the preference in favor of individual creditors is made with the purpose of defrauding the firm creditors. But if the preference is an honest one, and is a mere selection of one bona fide creditor instead of another, with the intent to pay honest debts so far as the property will reach,' then, as we think, such preference is lawful, provided it is made with the consent of all the *319 partners. Firm creditors, as we have seen, have no lien upon firm property, and their equities must be worked out only through the partners themselves, or, as it is sometimes said, by way of subrogation to the equities of the partners. Any partner may insist that the debts of the firm shall first be paid out of the firm property; and it is only with the consent of all the members of the firm that any individual partner’s debt may be paid out of the firm assets. If, however, the consent of all is given, and if there is no fraud in the preference, any debt, whether of the firm or of any of its members, may be paid out of the firm property, so long as such property remains under the control of the partners. It is, of course, otherwise, as we have seen,, so soon as the firm property has passed into the custody of a court.
In Case v. Beauregard, 99 U. S. 119, cited in Jackson Bank v. Durfey, supra, the Supreme Court of the United States said: “The bill, it is true, charges that the several transfers of the partners were illegal and fraudulent, without specifying wherein the fraud consisted. The charge seems to be only a legal conclusion from the fact that some of the transfers were made for the payment of the private debts of the assignors. Conceding such to have been the case, it was a fraud upon the other partners, if a fraud at all, rather than upon the joint creditors — a fraud which those partners could waive, and which was subsequently waived by the act of fusion.” According to this decision, as admitted by the court, in Jackson Bank v. Durfey, supra, “it is not a fraud upon partnership creditors for an insolvent firm to devote the joint estate to the payment of the separate debts of -the partners, leaving no provision for firm creditors.”
*320 Among the numerous authorities cited in support of the holding in Jackson Bank v. Durfee, supra, is Patterson v. Seaton, 70 Iowa, 689, 28 N. W. 598; but, in the later case of Smith v. Smith, 87 Iowa 93, 43 Am. St. 359, 54 N. W. 73, the Supreme Court of Iowa distinctly holds that: “A mortgage made by the members of a partnership on the firm property to secure the individual debt of one of its members is not fraudulent as against creditors of the firm, and they are not entitled to have it vacated because its enforcement will prevent the firm property from being applied to the satisfaction of the firm obligations.” In a valuable note to this case, in 43 Am. St. 364, 384, the authorities on this subject are collected.
Because it is shown that an assignment for the benefit of creditors was made by Thomas and Grist on the 26th day of December, 1894, but seven days after the giving of the mortgage in question, it is argued that the mortgage and assignment are virtually parts of one and the same transaction; that the dissolution of the partnership was contemplated when the mortgage was executed, and, consequently, that fraud is shown in the preference thus made in favor of the individual over the firm creditors. (And Peed v. Elliott, 134 Ind. 536, is cited as authority to sustain this contention. In Peed v. Elliott, supra, there was but twenty minutes time between the execution of the mortgage and that of the deed of assignment; the latter was in course of preparation at the time the former was signed, all being done under the supervision of the same attorney; and both mortgage and assignment were placed in the hands of the attorney, who first put the mortgage on record and held the deed of assignment from record for about four hours longer. The fraud was palpable in that case. The mortgage and assignment, though professedly separate, were *321 practically parts of one and the same document; and the court held that the preference might as well have been attempted to have been made in the deed of assignment itself.
In the case before us, however, the evidence shows, not' only a week’s interval between the mortgage and the assignment; but it also shows that nothing was said or thought of an assignment at the date of the mortgage, and that the partners then believed they would have a good holiday trade and be able to continue in their business, or perhaps sell it out in bulk to another firm with which they had been for some time negotiating. It was only at the urgent request of the sureties that they made the security mortgage. Not until the close of the week preceding Christmas did all their hopes fail, and they found themselves compelled to make the assignment. The record discloses no badges of fraud. The debts secured were almost wholly for money borrowed to go into the business itself, and were in all respects of at least equal equity with those left unsecured. In Stix v. Sadler, 109 Ind. 254, a good faith preference mortgage made five days before an assignment was upheld. See, also, John Shillito Co. v. McConnell, 130 Ind. 41.
Even the case cited, Peed v. Elliott, supra, is authority for the conclusion to which we are led. There it was also held that, “It matters not how short a time intervenes between the conveyance or mortgage executed for the preference of creditors and the making of the deed of assignment, if it be, in fact, a separate transaction, and a bona fide one, though the time may be properly considered in determining as to whether or not the transaction is bona fide or not, and whether or not it is in fact a separate transaction.”
We think the evidence supports the finding.
Judgment affirmed.