LAWRENCE LUMBER COMPANY ET AL v. ANDREW J. LYON.

[47 South. 849.]

1. **PARTNERSHIP.** *Receiver. Appointment. Insufficient showing for. Surviving partner.*

A receiver of a co-partnership should not be appointed on the *ex parte* application of an unsecured creditor because the firm had executed a deed of trust on its property to secure another creditor, although the property had been advertised for sale thereunder by the trustee, or because, one of the partners having died, the survivor had not executed bond for the faithful performance of his duties as surviving partner; the insolvency of neither the co-partnership nor of its members nor of the secured creditor being shown and the validity of the deed of trust not being questioned.

2. **SAME.** *Deed of trust.*

A deed of trust given by a co-partnership to secure the purchase money due for property, constituting an industrial plant, containing no provision authorizing it to use the property in business for an unreasonable time, is not invalid or within the condemnation of the case of *Acme Lumber Co. v. Hoyt*, 71 Miss., 106, 14 South., 464, although it be upon the products of the plant in existence at its execution and thereafter to be manufactured.

FROM the chancery court of Newton county.

HON. JAMES L. McCASKILL, Chancellor.

Lyon, appellee, doing business in the name of A. J. Lyon & Company, was complainant in the court below, and Allen Myers, surviving partner of the Lawrence Lumber Company, and others, appellants, were defendants there. From a decree refusing to vacate the appointment of a receiver the defendants appealed to the supreme court. And from a decree denying the petition of defendants, Crescent Lumber Company and another for an order directing the receiver to turn over to them designated property held by him as receiver, the petitioners appealed to the supreme court.

The opinion of the court states the facts. As directed by the court, the articles of partnership and the deeds of trust mentioned in the opinion, are set forth in full:

The articles of partnership were as follows:

"This contract, this day entered into by and between Allen Myers, hereafter described as the party of the first part, and J. C. Standiford, hereafter described as the party of the second part, witnesseth as follows, to-wit:

"The said parties hereby associate themselves together as equal partners in the business of manufacturing and selling lumber and in the mercantile business, to be conducted in Newton county, state of Mississippi, under the firm name of the Lawrence Lumber Company; said partnership to continue so long as it is mutually agreeable to the parties hereto. It is agreed that the sum of $11,400 shall be invested in said business, one-half of which shall be raised and paid into the firm by the party of the first part, and the other half shall be raised and paid into the firm by the party of the second part. Either party may furnish his *pro rata* portion of the investment in cash or in property at an agreed valuation. It is mutually agreed that all the profits of the partnership business, after the payment of all the debts of the partnership and all the expenses of conducting the business thereof, shall be equally divided between the parties to this agreement; such division to be made from time to time as the financial condition of the company may warrant. It is mutually agreed that the general office of the company shall be located at Meridian, Mississippi, and shall be in charge of the party of the first part, or in charge of some duly authorized agent of the said party of the first part, to be selected solely by the party of the first part; and that the said party of the first part, or such agents as he may select, shall have sole charge of the collection and distribution of all the funds of the partnership, shall sign all checks against the funds of said partnership in bank, and shall sign all acceptances and evidences of debt on behalf of said partnership. The party of

the second part, or his son, F. B. Standiford, as agent for the party of the second part shall have the management of the sawmill, stores, logging operations, and shipments of the product of the mill; and shall be allowed a salary of $125 per month, payable monthly out of the partnership funds, which said sum of $125 salary shall be treated and considered as one of the legitimate expenses of the business. It is mutually agreed that no debts shall be contracted by said party of the second part, or by his son and agent in charge of the management of the sawmill, stores, and logging operations, to an amount in excess of $100, excepting only with the approval of the party of the first part or his duly authorized agent. It is mutually understood and agreed that the arrangements hereinbefore set forth as to management of the business and the handling of the funds shall continue until such time as the parties hereto may agree in writing to vary same.

"If at any time disagreements should arise between the parties hereto, or between their agents, in reference to the partnership business or any matter relating thereto, or in the event that either party should desire to terminate the partnership relations, then the party to this contract who is dissatisfied with a continuance of the partnership relations, or desires to terminate the partnership, shall give the other party notice thereof, and shall have the right to state to the other party the price at which he is willing to sell his interest in the partnership, which said price, if accepted, he hereby binds himself to take in full of his interest in said business, and which price, also if not accepted by the other party he binds himself to give for the interest of the other party in said partnership. In such event the other party agrees and binds himself to give the party desiring the dissolution of the partnership the price he may name for his interest in said partnership business, or to take such price for his interest in said business. The notice referred to shall be ten days' written notice, and the party who buys the interest of the other partner in said business, under such circumstances,

shall have ten (10) days from the date of the receipt of such notice within which to take and pay for same. Should either party refuse to give for the interest of the other partner or to take for his own interest in said partnership business the price named by the other partner within ten (10) days from the receipt of notice from the other partner of his desire to terminate the partnership relations and of the price at which the dissatis- fied partner is willing to buy or sell, then it is agreed that the partner who shall have refused, or failed, or neglected, either to buy or sell within ten days from the date of such notice shall turn over to the other partner the entire assets and business of the partnership, and the partner to whom the assets and busi- ness of the partnership are thus turned over may assume entire control of the partnership business, and shall be entitled to pos- session of all of its assets, and shall have full right, power, and authority to wind up the business of the partnership and to sell the entire assets of the partnership, either at public or pri- vate sale, on such terms, conditions, and notice as to him shall seem best, provided that he shall give the other partner at least five (5) days' written notice of any private or public sale of said assets, and shall apply the proceeds of such sale to the pay- ment of the partnership debts, and shall divide any excess re- maining after the sale of the partnership assets and the pay- ment of the partnership debts equally between the two partners. Any such sale shall pass the title of both partners in and to the assets of the partnership. Before any division of any surplus of the partnership assets after such sale thereof shall be divided between the partner, the partner assuming charge of said part- nership assets and business and making said sale shall be al- lowed and shall retain, out of the surplus of the proceeds of the partnership assets remaining after payment of the partnership debts, a reasonable compensation for his services in winding up the partnership business and making sale of the partnership as- sets. The partner making sale of the partnership assets, under this provision of the articles of partnership, may sign such

conveyance and instruments of writing to effectuate the same as may be necessary, and he may also buy any or all of the partnership assets at any sale thereof made by him under the provisions of this agreement. The partner winding up the partnership business and selling same under the provisions hereof may do all acts relating thereto by a duly authorized agent.

"Witness our signatures in duplicate, this the 26th day of November, 1906.

"Allen Myers.

"J. C. Standiford."

The first deed of trust, from James C. Standiford to Allen Myers, is as follows:

"Whereas, I, James C. Standiford, am justly indebted unto Allen Myers in the sum of $4,309.47, as evidenced by my two promissory notes of $2,154.73 and $2,154.74, dated November 26, 1906, and due one and two years, respectively, after date, with interest at the rate of eight (8) per centum per annum from date until paid, and stipulating for the payment of ten (10) per centum attorney's fees for collection, if not paid at maturity and if collected by an attorney, and being desirous to secure, by this deed of trust, the prompt payment of said indebtedness at maturity:

"Therefore, I the said James C. Standiford, hereby sell, convey and warrant unto George B. Neville, as trustee, the following described property, situated in the county of Newton and state of Mississippi, to-wit: My entire undivided interest in and to the entire real and personal property of the Lawrence Lumber Company, a partnership composed of Allen Myers and James C. Standiford, and engaged in the lumber and mercantile business at and near Lawrence, Newton county, state of Mississippi, said property consisting of a sawmill and machinery and fixtures, and all tools, equipment, dry kilns, mill houses, stores, dwellings, mules, oxen, wagons, lands and timber owned and used by said firm, together with all and singular the appurtenances—in trust that, if at any time all or any part of said indebtedness shall be past due and unpaid, the said George B.

Neville, trustee, shall, upon the demand of said Allen Myers, his legal representatives or assigns, sell said property at the courthouse door in said county for cash to the highest bidder,. on giving three weeks' notice of the time, place, and terms of sale by advertisement in some newspaper published in Newton county and by posting notice thereof at the courthouse in said county, and out of the proceeds of said sale pay the said indebtedness, whether all be then due or not, and also all the interest thereon to date of sale, and also all the expense of said sale and of executing this trust.   For default in the said matters the trustee may make sale of the said property as for default in payment, and apply proceeds to payment. of the indebtedness hereby secured, whether all thereof be then due or not, and the interest thereon to date of sale, and cost of making sale.   In the event that the said trustee, or any substituted trustee, shall die, remove from said state, or refuse or neglect to act in the premises, the said Allen Myers, his legal representatives or assigns, may in writing appoint another trustee, who may exercise all the powers of the trustee herein named.

"Witness my signature this the 26th day of November, 1906.
                                        "J. C. Standiford."
"State of Mississippi, Scott County.

"Personally appeared before me, the undersigned authority in and for said county and state, who acknowledged that he signed and delivered the foregoing instrument on the day and year therein stated as his act and deed.   Given under my hand and seal this 26th day of November, A. D. 1906.
                                        "L. F. Cotton, Ex. Off."
"State of Mississippi, Scott County.

"Personally appeared before me, the undersigned authority in and for the aforesaid county and state, the within named J. C. Standiford, who acknowledged that he signed and delivered the foregoing instrument on the day and year herein mentioned as his own act and deed.   Given under my hand and official seal this the ――― day of ―――, A. D. 1907.
                              "―――――――."

"The foregoing deed of trust and the notes secured thereby transferred and asisgned to C. E. Myers as collateral security for what I owe him this the ———— day of ————, A. D. 1907.                                    ————————."

"The State of Mississippi, Newton County.

"I, Eugene Carlton, clerk of the chancery court of said county, do hereby certify that the within deed of trust was filed for record in my office on the 26th day of November, 1906, at 9:00 o'clock and ———— minutes, a. m., and that the same, together with the certificate and acknowledgment, is now duly recorded in Deed Book No. 24, pages 485 and 486, of the records of deeds in my office. Given under my hand and official seal of office in Decatur, Mississippi, this 30th day of November, 1906.

"[Seal.]                              Eugene Carlton, Clerk."
"Filed Nov. 28, 1906, at 9:00 o'clock a. m.
"Recorded Nov. 30, 1906, Deed Book 24, pages 485 and 486.
                              "Eugene Carlton, Clerk."

The second deed of trust, from James C. Standiford to Allen Myers, is as follows:

"Whereas, I, J. C. Standiford, am justly indebted unto Allen Myers in the sum of $4,395.66, as evidenced by my promissory note of $4,395.66, dated November 26, 1907, and due three months after date, and stipulating for the payment of ten (10) per centum attorney's fees for collection, if not paid at maturity and if collected by an attorney, and being desirous to secure by this deed of trust the prompt payment of said indebtedness at maturity:

"Therefore, I, the said J. C. Standiford, hereby sell, convey, and warrant unto George B. Neville, as trustee, the following described property, situated in the county of Newton and state of Mississippi, to-wit: My entire undivided interest in and to the entire real and personal property of the Lawrence Lumber Company, a partnership composed of Allen Myers and J. C. Standiford, and engaged in the lumber and mercantile

business at and near Lawrence, Newton county, state of Mississippi, said property consisting of a sawmill and machinery and fixtures and all tools, equipment, dry kilns, mill houses, stores, dwellings, mules, oxen, wagons, lands, and timber owned and used by said firm together with all the singular appurtenances—in trust that, if at any time all or any part of said indebtedness shall be past due and unpaid, the said George B. Neville, trustee, shall upon the demand of the said Allen Myers, his legal representatives or assigns, sell said property at the courthouse door in said county for cash to the highest bidder, on giving three weeks' notice of the time, place, and terms of sale by advertisement in some newspaper published in Newton county, and out of the proceeds of said sale pay the said indebtedness, whether all be then due or not, and also all the interest thereon to date of sale, and also the expense of said sale and of executing this trust. For default in the said matters the trustee may make sale of the said property as for default in payment, and apply proceeds to payment of the indebtedness hereby secured, whether all thereof be then due or not, and the interest thereon to date of sale, and cost of making sale. In the event that the said trustee, or any substituted trustee, shall die, remove from said state, or refuse or neglect to act in the premises, the said Allen Myers, his legal representatives or assigns, may in writing appoint another trustee, who may exercise all the powers conferred on the trustee herein named.

"Witness my signature this the 26th day of November, 1906.

"James C. Standiford."

"State of Mississippi, Newton County.

"Personally appeared before be, the undersigned authority in and for the aforesaid county and state, the within named J. C. Standiford, who acknowledged that he signed and delivered the foregoing instrument on the day and year therein mentioned as his own act and deed. Given under my hand and official seal this the 8th day of January, A. D. 1908.

"L. W. McCain, J. P."

"The foregoing deed of trust and the notes secured thereby transferred and assigned to C. E. Myers as collateral security for what I owe him this 8th day of January, A. D. 1908.

"Allen Myers."

"State of Mississippi, Newton County.

"I, W. J. Leslie, chancery clerk in and for said county, thereby certify that the foregoing instrument was filed in my office for record on January 14, 1908, and the same, together with the acknowledgment, is now recorded in the record of Mortgages and Deeds of Trust on Land No. 2, pages 51 and 53, of the records of deeds of my office. Given under my hand and official seal this January 15, 1908.

"[Seal.]                    W. J. Leslie, Chancery Clerk."

"J. C. Standiford to Allen Myers. Deed Trust. Filed for record on the 14th day of January, 1908.

"W. J. Leslie, Clerk."

"Recorded in Record of Mortgages & D. T.'s on Land No. 2, pages 51 and 52, January 15, 1908.

"W. J. Leslie, Clerk."

The deed of trust from the Lawrence Lumber Company to the Crescent Lumber Company is as follows:

"Whereas, on the 26th day of November, A. D. 1906, the undersigned Lawrence Lumber Company, a partnership composed of Allen Myers and James C. Standiford, executed and delivered to the Crescent Lumber Company, a partnership composed solely of C. E. Myers, a contract in and by which the said Lawrence Lumber Company agreed to sell and deliver to the order of the said Crescent Lumber Company all the pine lumber of every grade, quantity, and dimensions manufactured by the party of the second part during such time as the said contract should remain in force, in accordance with the terms and conditions and subject to all of the stipulations of the said contract, which is here and now referred to, it being stipulated in said contract that it should remain in force from and after its date until such time as either party should give the other 30 days'

notice in writing of a desire to terminate the same; and whereas, the said contract has continued in force from the said 26th day of November, A. D. 1906, to date; and whereas, both parties thereto desire the said contract to continue in force according to its terms; and whereas, the said Lawrence Lumber Company is now indebted on account unto the said Crescent Lumber Company for advances made by the Crescent Lumber Company to the said Lawrence Lumber company on lumber manufactured by the Lawrence Lumber Company and covered by the said contract of November 26, 1906; and whereas, the said Lawrence Lumber Company expects and desires to obtain during the further life of the said contract of November 26, 1906, additional advances on account from the said Crescent Lumber Company, as against lumber manufactured and to be manufactured by the said Lawrence Lumber Company, and contemplated and covered by the said contract of November 26, 1906; and whereas, the amount of the indebtedness of the said Lawrence Lumber Company for advances heretofore made to the said Lawrence Lumber Company by the said Crescent Lumber Company and advances hereafter to be made by the said Crescent Lumber Company to the said Lawrence Lumber Company is constantly varying from month to month; and whereas, the said Lawrence Lumber Company desires to secure the said Crescent Lumber Company for any and all indebtedness now existing or that may hereafter arise by reason of any transactions heretofore had or hereafter to be had by and between the said Crescent Lumber Company and the said Lawrence Lumber Company:

"Now, therefore, in consideration of the premises, the said Lawrence Lumber Company does hereby sell, convey, and warrant unto George B. Neville, as trustee, all lumber and saw logs now on the yards of the said Lawrence Lumber Company, whether manufactured or not, and owned by the said Lawrence Lumber Company, and in the possession of the said Lawrence Lumber Company, in the said county of Newton, state of Mis-

.sissippi, and also all lumber and logs now owned by. and in the possession of the said Lawrence Lumber Company, and situated .at or near the railroad depots at Lake and Lawrence, state of Mississippi, on the A. & V. Railroad, and also all lumber of whatever kind and description that the said Lawrence Lumber Company may hereafter manufacture at their present sawmill in Newton county, state of Mississippi, out of any and all timber now owned by the said Lawrence Lumber Company, and .situated in the counties of Newton and Scott, state of Missis- .sippi; it being the intent of the said Lawrence Lumber Company to sell, convey, and warrant unto the said trustee the entire ·output of the only sawmill now owned and being operated by the said Lawrence Lumber Company in the said county of New- :ton during the continuance of the life of said contract of No- ·vember 26, 1906, to be derived from any and .all timber owned by the said Lawrence Lumber Company in the·counties of New- ton and Scott, state of Mississippi, and it being further under- ·stood that this deed of trust is also to cover the entire output of :any.sawmill whatever that the said Lawrence Lumber Company may operate during the life of the contract of November 26, 1906, in the counties of Newton or Scott, for the purpose of manufacturing lumber of every kind out of any and all timber ·of every kind now owned by the said Lawrence Lumber Com- pany and situated in the said counties of Newton and Scott— in trust that if at any time all or any part of the indebtedness of the Lawrence Lumber Company to the Crescent Lumber ·Company arising out of any dealings and transactions whatso- ever heretofore had or hereafter to be had between the said Lawrence Lumber Company and said Crescent Lumber Com- pany during the life of the contract of November 26, 1906, or ·by reason of any advances heretofore made or hereafter to be made to the said Lawrence Lumber Company by the said Cres- cent Lumber Company, shall be past due and unpaid, or if at any time the said Lawrence Lumber Company shall violate the -terms and conditions and obligations of the contract of Novem-

ber 26, 1906, it shall be lawful for the said trustee, or any substituted trustee, upon the demand of the Crescent Lumber Company, their legal representatives or assigns, to take into possession the property hereinabove described, and sell the same at such place or places in the said county of Newton and state of Mississippi as to the said trustee, or any substituted trustee, may deem best; the said trustee or any substituted trustee being hereby authorized to select and designate the place of sale, at public outcry for cash, after having given three weeks' notice of the time, place, and terms of sale by posting notices thereof in three or more public places in the said county of Newton and state of Mississippi, and out of the proceeds of such sale to pay the indebtedness, whether all be then due or not, together with all the expenses of making said sale, including a reasonable fee to the trustee for making said sale, rendering the overplus, if any, unto us, our legal representatives or assigns. Should the trustee herein named or and substituted trustee die, remove from the state, or refuse or neglect to act in the premises, the said Crescent Lumber Company, its legal representatives or assigns, may in writing appoint another trustee, who shall have and exercise all the powers conferred upon the trustee herein named.

"Witness our signature this the 2d day of Jan., A. D. 1908.

"Allen Myers.

"James C. Standiford."

"State of Mississippi, County of Newton.

"Personally appeared before me, the undersigned authority in and for the aforesaid county and state, Allen Myers and J. C. Standiford, of and for the Lawrence Lumber Company, a partnership composed of the said Allen Myers and J. C. Standiford, who acknowledged that they signed and delivered the foregoing instrument on the day and date mentioned as the act and deed of the said Lawrence Lumber Company. Given under my hand and official seal this the 2d day of January, A. D. 1908.

"L. W. McCain, J. P."

"State of Mississippi, Newton County.

"I, Eugene Carlton, clerk of the chancery court of said county, do hereby certify that the within deed of trust was filed for record in my office on the 4th day of January, 1908, at —————— o'clock and —————— minutes —————— M., and that the same, together with the certificate and acknowledgment, is now duly recorded in Chattel Deed Book 24, pages 128, 129, 130, and 131, of the records of deeds in my office. Given under my hand and official seal of office in Decatur, Mississippi, this the 4th day of January, 1908.

    "[Seal.]                       Eugene Carlton, Clerk."

*Geo. B. Neville and R. E. Wilbourne,* for appellants.

The appointment of the receiver without notice was erroneous and the decrée so appointing him should have been vacated, since it did not appear either from the bill and affidavit thereto or from the testimony taken on the hearing of the motion to vacate such appointment, that an immediate appointment of a receiver was necessary at the time of the appointment. Nor was it shown that there was good reason for not giving notice before the appointement. Beach on Receivers, § 5; *Buckley v. Baldwin,* 69 Miss. 804, 13 South. 851; *Bank v. Loan Co.,* 104 Ala. 297, 16 South. 111; *Terry Co. v. Stockton,* 40 Fla. 141, 23 South. 557; 10 Am. & Eng. Dec. in Equity, 101; *Henderson v. Reynolds,* 11 L. R. A. (N. S.) 960; *Meridian News v. Diem,* 70 Miss. 695, 12 South. 702; 17 Am. & Eng. Pl. & Pr. 1736.

The appointment of the receiver was erroneous for the reason that the bill of complaint and the evidence show that an injunction against the sale of the property under the trust deeds would have been an entirely adequate remedy, if appellee were entitled to any remedy at all. *Meridian News v. Diem, supra; Shannon v. Davis,* 64 Miss. 717, 2 South. 240; 17 Am. & Eng. Ency. Pl. & Pr. 721, 728.

The appointment was erroneous and should have been vacated for the additional reason that appellee's remedy, if any, should

have been by proceeding under the statute law to have an administrator of the estate of James C. Standiford appointed who could have taken charge of the assets of the partnership if the surviving partner should refuse to give bond therefor. Code 1906, §§ 2015, 2024, 2085, 2086, 2090.

The appointment of the receiver should have been vacated upon appellants' motion for the reason that the property was in possession of the mortgagee after condition broken. 10 Am. & Eng. Decisions in Equity, 125; Beach on Receivers, §§ 80, 81; *St. Mary's Machine Co. v. National Supply Co., 64* L. R. A. 558; *Berney v. Sewell,* 1·Jac. & Walker (Eng.) 627; *Banking Co. v. Woodruff,* 3 N. J. Eq. 210; *Hammond v. Solliday,* 8 Col. 610, 9 Pac. 781; *Bayard v. Fellows,* 28 Barb. (N. Y.) 451.

The appointment of the receiver should have been vacated because neither the affidavit to the bill nor the proof on the hearing of the motion to vacate the appointment showed the existence of facts excusing the appellee from the necessity of giving notice before obtaining such appointment. 17 Am. & Eng. Ency. Pl. & Pr. 735, 736.

It is clear that there was ample time within which to have given notice of a hearing on an application to appoint a receiver before the foreclosure of the deeds of trust; and that counsel for appellee knew of the advertisement of the property under foreclosure proceedings for fully a week before the bill was filed.

On the hearing of the motion to vacate the appointment of the receiver, appellee laid great stress upon the proposition that the surviving partner had not given bond for the administration of the partnership assets, and insisted that under the law the surviving partner was required to give a bond. It was appellee's contention that the case of *McCaughan v. Brown,* 76 Miss. 25 South. 155, had been modified by the subsequent case of *Gurley v. Gurley,* 77 Miss. 413, 26 South. 962. We deem it unnecessary, in answer to such contention, to do more than merely refer to those cases and to Code 1906, §§ 2085, 2086.

Neither *Bank v. Gurley, supra,* nor *Bank v. Fargason,* 79

Miss. 64, 29 South. 791, cited by appellee, is applicable. Even if those cases had any application to the facts in the case at bar, they would not add any value to the contention that appellee was entitled to the appointment of a receiver. We insist that the two cases last cited above are not here applicable for the three following reasons: First, there is no evidence to show that the Lawrence Lumber Company and the individual partners comprising such company were insolvent at the time of the execution of the deed of trust from James C. Standiford to Allen Myers, assigned by Allen Myers to C. E. Myers. In fact, it is shown in evidence that the Lawrence Lumber Company was at that time solvent. Second, it does not appear from the testimony that the individual partners of the Lawrence Lumber Company were insolvent in January, 1908, when Allen Myers executed and delivered the deed of trust to C. E. Myers securing the original purchase price of the property. Third, it is nowhere alleged in the bill of complaint that the individual members of the firm of Lawrence Lumber Company, or the Lawrence Lumber Company itself, were insolvent at the time of the execution of the deeds of trust from James C. Standiford and Allen Myers on their undivided interests in the partnership property.

The cases of *Bank v. Gurley, supra,* and *Bank v. Fargason, supra,* are further differentiated from the case at bar by the fact that the property covered by these deeds of trust aforesaid was not acquired or purchased out of assets of the firm's creditors, but was originally owned by C. E. Myers. The debt secured by the aforesaid deeds of trust was for the purchase price of the property.

Appellee relies on the case of *Acme Lumber Co. v. Hoyte,* 71 Miss. 106, 14 South. 464, and upon the prior case of *Harmon v. Hoskins,* 56 Miss. 142, in support of the contention that the deed of trust made by the Lawrence Lumber Company to C. E. Myers is void upon its face. But the deed of trust in the case at bar is different from the instrument in the *Acme Lumber Com-*

*pany case, supra.* Furthermore, the deed of trust to C. E. Myers was executed to secure the purchase money of the plant and property covered by the said deed of trust. The lien of a vendor for the unpaid purchase money due him can be enforced in chancery as well as in the manner laid down in Code 1906, ch. 83. Further, the lien of the vendor of personal property is. not waived by merely taking additional security not inconsistent therewith. *Smith p. Butts,* 269 ; *Parbury v. Johnson,* 51 Miss. 291; *Champenois v. Tinsley,* 90 Miss. 38, 42 South. 89 ; *Everman v. Wliczinski,* 51 Miss. 841 ; *Melton v. Williams,* 83 Miss.. 624, 36 South. 152.

*Hall, Hall & Jacobson,* for appellee.:

The Lawrence Lumber Company, a partnership, ceased when J. C. Staniford died, his death working a dissolution of the partnership. The surviving partner, Allen Myers, became thereupon vested with a trust in the partnership assets. Parsons on Partnership, sec. 344; *Gurley v. Gurley,* 77 Miss. 413, 26 South. 962. Allen Myers, the surviving partner, not only failed to take the steps necessary for the protection of the interests of all concerned, thereby showing his utter unfitness for the trust imposed upon him, but sat supinely by and permitted his son, C. E. Myers, to advertise for sale, under the deeds of trust, all of the property, assets and effects of the former partnership.. In fact, Allen Myers permitted C. E. Myers to offer for sale all of the property, save the lumber, being of the value of several thousands of dollars, under deeds of trust given by the individual members of the firm for their individual liabilities. This should not have been allowable, even if the deeds of trust had been jointly executed or had been given by either member with the express consent of the other on partnership assets for their respective individual liabilities. *Bank v. Durfey,* 72 Miss. 971, 18 South. 456 ; *Bank v. Fargason,* 79 Miss. 64, 29 South. 791; *George v. Derby Lumber Co.,* 81 Miss. 725, 33 South. 496;. *Fairley v. Money,* (Ala.) 58 Am. St. Rep. 585.

The interest of partners upon dissolution of the partnership
is whatever may be left after the payment of the partnership
liabilities. The individuals who were partners become tenants
in common of what remains, and they may then proceed to the
adjustment of equities and a division of such property among
themselves. *Saunders v. Young,* 31 Miss. 111; *Bank v. Durfey,.
supra.*

The deeds of trust covered logs and lumber being prepared
for market. The effort was being made by certain of appellants
to permit an insolvent partnership to place such property be-
yond the reach of creditors by means of foreclosure of the deeds
of trust. Certainly the deeds of trust, made by the two partners,
Allen Myers and James C. Standiford, are void under the prin-
ciples announced in *Bank v. Durfey,* 72 Miss. 971, 18 South.
456; *Harmon v. Hoskins,* 56 Miss. 142; *Johnson v. Dick,* 27
Miss. 277; *Farmers' Bank v. Douglas,* 11 Smed. & M. 469;
*Bank v. Caperton,* 74 Miss. 857, 22 South. 60.

Under the circumstances, when he should have been active to
protect the equities of all concerned, the trustee, Allen Myers,
in possession of the mortgaged property, did nothing, in fact
he did worse than nothing. He performed the part of a figure
head, and permitted his son to proceed to sell the property of
the insolvent and defunct partnership so as to place the prop-
erty without the jurisdiction of the court, and appropriated
the proceeds thereof to the payment of any indebtedness which
he might see fit to pay, to the prejudice of the large majority of
creditors. Under these circumstances, the chancellor properly
appointed a receiver without notice. The necessity was urgent.
The court will always appoint a receiver when the surviving
partner of a partnership fails to protect and properly handle
the estate. *Word v. Word,* (Ala.) 7 South. 412. Mr. Pomeroy
in 5 Pom. Eq. Jur. (3d ed.) 135, 144, furnishes the principles
which authorize the appointment of a receiver without notice,
the fundamental idea being *necessity* for prompt action to pre-
vent the loss or destruction of the property involved. In *Buck-
ley v. Baldwin,* 69 Miss. 804, 13 South. 851, a receiver was ap-

pointed without notice, upon a state of facts not warranting any appointment either with or without notice, and Campbell, C. J., availed himself of the occasion to inveigh against improvident appointments, and furnished the following wholesome guide: "When a proper case is made for a receiver, the power to appoint should be exercised, but, even then, with due regard to the situation and circumstances of the case and the rights and interests of defendants, and never without notice to them and opportunity to be heard, unless there is a satisfactory showing of a necessity for such urgency. In *Meridian News Co. v. Diem,* 70 Miss. 695, 12 South. 702, the same great judge made a like criticism of an appointment made without notice, but the reversal in that case was predicated not of that fact, but of the fact that no sufficient warrant existed for any appointment at all. In that case the learned judge stated that "there is now less objection to appointing a receiver without notice under the law which requires a bond of the complainant in such cases, than before. Code 1892, § 575." In *Levy v. Russel,* 82 Miss. 531, 33 South. 651, 34 South. 321, involving the appointment of a receiver without notice, Calhoon, J., in rendering the opinion said that "the apointment of the receiver was entirely proper upon the facts in this case." Practically to the same effect was the decision in *Pearson v. Kendricks,* 74 Miss. 235, 21 South. 37. The case at bar presents a situation where prompt action was necessary. The chancellor correctly appointed the receiver, and the rights of all conerned were in no way hurt thereby. There could have been no valid foreclosure of the two deeds of trust executed by the partners, Allen Myers and James C. Standiford, as shown above. And the deed of trust to C. E. Myers is void upon its face. *Acme Lumber Co. v. Hoyte,* 71 Miss. 106, 14 South. 464; *Harmon v. Hoskins,* 56 Miss. 142; *Ewing v. Cozill,* 13 Smed. & M. 79.

Argued orally by *R. E. Welbourne* and *George B. Neville,* for appellant and by *G. Q. Hall,* and *Gabriel Jacobson,* for appellee.

WHITFIELD, C. J., delivered the opinion of the court.

These two appeals have been presented together, and will be by us so considered. The facts in the case are as follows: A. J. Lyon & Co., of Meridian, Mississippi, filed their bill in the chancery court of Newton county, state of Mississippi, against the Lawrence Lumber Company, the Crescent Lumber Company, and Geo. B. Neville, trustee, praying for and obtaining the appointment of D. L. Ragland as receiver of the property and effects of the said Lawrence Lumber Company. The appellants, Lawrence Lumber Company, Crescent Lumber Company, and Geo. B. Neville, trustee, made a motion before the chancellor in vacation to vacate the appointment of said receiver, which was heard by the chancellor in vacation upon oral testimony, and a decree rendered overruling the motion of appellants to vacate the appointment of said receiver, from which decree appellants have proscuted this appeal.

The undisputed facts disclosed by the record and the testimony are as follows:

The Crescent Lumber Company was and is a partnership composed solely of C. E. Myers, and was and is engaged in the lumber brokerage business in the city of Meridian. C. E. Myers, the sole member of said Crescent Lumber Company, prior to November 26, 1906, was a stockholder in the Lake Lumber Company, a corporation, which said corporation was then the owner of two sawmill plants, one of which was situated near Lawrence, in Newton county, Mississippi. The said Lake Lumber Company, prior to November 26, 1906, sold to C. E. Myers, for the consideration of $10,409.37, its said sawmill plant near Lawrence, in Newton county, state of Mississippi, and the said C. E. Myers paid the said Lake Lumber Company therefor in cash and the cancellation and satisfaction of the debt of the Lake Lumber Company to the said C. E. Myers. Thereupon the said C. E. Myers sold to Allen Myers, his father, the same sawmill plant and appurtenances for the same consideration that he had paid the said Lake Lumber Company for it, and

took the note of the said Allen Myers for the entire purchase price of said sawmill plant and appurtenances, to-wit, for the sum of $10,409.37, of date November 26, 1906, due and pay-able on demand. Thereupon the said Allen Myers sold a half interest in the said sawmill plant and appurtenances to one James C. Standiford, and the said James C. Standiford and Allen Myers formed a partnership under the firm name of Law-rence Lumber Company for the operation of said sawmill prop-erty. The articles of partnership of the Lawrence Lumber Company are dated November 26, 1906. James C. Standiford, on the date the partnership articles were signed, executed and delivered to the said Allen Myers his two promissory notes for the sum of $2,154.73 and $2,154.74, respectively, dated No-vember 26, 1906, and due in one and two years, respectively, after date, with interest at the rate of eight percentum per an-num after date, aggregating the total sum of $4,309.47, for the balance of the purchase price of an undivided one-half interest in the sawmill plant purchased by the said Allen Myers of the said C. E. Myers as hereinbefore set forth, and secured the payment of said notes by a trust deed of date November 26, 1906, in favor of the said Allen Myers, on an undivided one-half interest in the said sawmill plant and appurtenances. Upon the execution of said notes and trust deed, they were delivered to the said C. E. Myers on the date of their execution as col-lateral security, to the said C. E. Myers for the debt of the said Allen Myers to the said C. E. Myers for the purchase price of said property. This deed of trust was filed for record on the 28th day of November, 1906, and duly recorded in the of-fice of the clerk of the chancery court of Newton county. The acknowledgment of the deed of trust was deficient, however, in that the name of the grantor in the deed of trust was omitted therefrom, and in that the mayor of the town of Lake, before whom the acknowledgment was taken, did not properly indicate his official character.

When the first of the notes given by the said James C. Standi-

ford to the said Allen Myers fell due on November 26, 1907, said James C. Standiford paid the interest on the two notes secured by said deed of trust, and executed a renewal note for the entire indebtedness due by him in the sum of $4,395.66, dated November 26, 1907, and due three months after date, thereby obtaining an extension of three months' time on the first note due and secured by the aforesaid deed of trust, which authorized the trustee to foreclose for the whole debt upon the failure to pay at maturity any one of said notes. Shortly thereafter it was discovered that there were errors in the acknowledgment of the deed of trust from James C. Standiford to Allen Myers, and the said James C. Standiford thereupon executed and delivered a new deed of trust to the said Allen Myers, securing his renewal of the note aforesaid. This deed of trust was duly filed for record and recorded in the office of the clerk of the chancery court of Newton county, state of Mississippi, on the 14th day of January, 1908. In order to save a multiplicity of conveyances and the cost of recording same, it was agreed and understood between the parties that the said Lake Lumber Company, in whom the title to the said sawmill and appurtenances was originally vested, should convey the same direct to the newly formed partnership of the Lawrence Lumber Company, composed of James C. Standiford and Allen Myers, and this was done by deed of date November 26, 1906. At the time of the formation of the partnership of the Lawrence Lumber Company, Allen Myers was in the employ of the Lake Lumber Company, at Forest, Mississippi, and not in a position to give his interest in the partnership aforesaid his personal attention, and he executed a power of attorney to his son C. E. Myers. It was contemplated that F. B. Standiford, the son of Jas. C. Standiford, should have active charge and control of the sawmill plant and operations at Lawrence, Mississippi, and his father, James C. Standiford, executed and delivered to him, of date November 26, 1906, a power of attorney. On the 26th of November, 1906, the newly formed partnership of the Lawrence

Lumber Company, composed of Jas. C. Standiford and Allen Myers, entered into a contract with the Crescent Lumber Company, composed of C. E. Myers, for the sale of the entire output of the sawmill of the said Lawrence Lumber Company, which said contract was executed on behalf of the Lawrence Lumber Company by Jas. C. Standiford.

The articles of copartnership, the note of Allen Myers to C. E. Myers for the purchase price of the sawmill property and plant, the notes and trust deed of Jas. C. Standiford to Allen Myers for the purchase price of the half interest in the said sawmill plant and appurtenances, and the deed of trust securing the same, and the powers of attorney from Allen Myers to C. E. Myers, and from Jas. C. Standiford, and the contract between Lawrence Lumber Company and Crescent Lumber Company, were all executed at the same time and place, to-wit, Lake, Mississippi, on the 26th day of November, 1906; Allen Myers, C. E. Myers, Jas. C. Standiford, and F. B. Standiford all being present, the various matters culminating in these instruments having been previously gone over and negotiated among the various parties and C. E. Myers having been requested by them to have the papers prepared, and having had the papers prepared at the instance of all the parties concerned. The said Jas. C. Standiford and his son, F. B. Standiford, resided at the sawmill plant, and the same was operated by the said F. B. Standiford, his father being present and working about the mill, until December, 1907, when by mutual written agreement between the partners of the Lawrence Lumber Company it was agreed that F. B. Standiford should withdraw from the management of the business of the Lawrence Lumber Company, and that the said Allen Myers should assume the management thereof from and after that date. The said Allen Myers took charge of the said sawmill plant on December 1, 1907, and continued thereafter in the management thereof; the said James C. Standiford also continuing to live at the sawmill plant and to work as theretofore in and about the mill, and

to assist the said Allen Myers in the conduct of the affairs of the business.

On the 2d day of January, 1908, the said Allen Myers executed and delivered to C. E. Myers, with the knowledge and consent of the said James C. Standiford, a deed of trust on his interest in the entire property and effects of the Lawrence Lumber Company to secure the said note of Allen Myers to the said C. E. Myers for $10,409.37, the original purchase price of the property of the said Lawrence Lumber Company, which said deed of trust was filed for record and recorded on the 4th day of January, 1908, in the office of the clerk of the chancery court of Newton county, state of Mississippi. As previously stated herein, the said indebtedness of $10,409.37 for the purchase price of said sawmill plant and property, acquired as hereinbefore detailed by the Lawrence Lumber Company, was further secured to the said C. E. Myers by the assignment and delivery to him as collateral security therefor of the notes and deeds of trust of the said Jas. C. Standiford to the said Allen Myers for the balance of the purchase price of the interest of the said James C. Standiford in the said sawmill plant and property.

From the inception of the life of the Lawrence Lumber Company, in accordance with the contract between the Lawrence Lumber Company and the Crescent Lumber Company, of date November 26, 1906, herein above mentioned, the said Lawrence Lumber Company sold its entire output of lumber to the Crescent Lumber Company, and the Crescent Lumber Company, in view of the said contract for the purchase of the entire output of said Lawrence Lumber Company, made cash advances to the said Lawrence Lumber Company on the lumber contemplated in the contract of November 26, 1906, which said advances were used by the said Lawrence Lumber Company in the conduct and operation of its plant, and in the payment of its outstanding and current bills and expenses, and in feeding and maintaining its stock, and in discharging its weekly pay rolls for labor. On the 2d of January, 1908, the date on which the said Allen

Myers, executed a deed of trust on his interest in the property of the Lawrence Lumber Company to the said C. E. Myers, the said Lawrence Lumber Company executed and delivered to C. E. Myers a deed of trust, securing the said Crescent Lumber Company for all sums then due or thereafter to become due to the said Crescent Lumber Company by the said Lawrence Lumber Company for the advances theretofore made and thereafter to be made to the said Lawrence Lumber Company by the said Crescent Lumber Company on the said lumber contemplated by the contract of November 26th, and all sums that were then due or might thereafter become due the said Crescent Lumber Company by the said Lawrence Lumber Company, arising out of any dealings and transactions whatsoever theretofore had or thereafter to be had between the said Lawrence Lumber Company and the Crescent Lumber Company, during the life of the contract of November 26, 1906. This deed of trust was duly filed for record and recorded in the office of the clerk of the chancery court of Newton county on the 4th day of January, 1908, and covered all lumber and saw logs then in the yard of the said Lawrence Lumber Company and owned by the said Lawrence Lumber Company, and all lumber and logs owned by and in possession of said Lawrence Lumber Company and situated at or near the railroad depots at Lake and Lawrence, Mississippi, and also all lumber, of whatever kind and description, that the said Lawrence Lumber Company might thereafter manufacture at their then sawmill in Newton county, state of Mississippi, out of any and all timber owned by the said Lawrence Lumber Company and situated in the counties of Newton and Scott, state of Mississippi.

The said Jas. C. Standiford died on or about the 28th day of May, 1908, at the plant of the said Lawrence Lumber Company, having continuously up to the time of his death lived at the said sawmill from the beginning of the partnership operations. Allen Myers, the surviving partner, was, of course, in possession of and entitled to the possession of the effects of the said Law-

rence Lumber Company as the surviving partner upon the death of the said Jas. C. Standiford. No administrator of the estate of Jas. C. Standiford was appointed by the chancery court of Newton county, state of Mississippi, nor were any letters of administration applied for by anyone. The Lawrence Lumber Company was indebted unto the Crescent Lumber Company in the sum of $8,809.49, as appears from the statement of the account of Lawrence Lumber Company with Crescent Lumber Company, which said balance of account was secured by the deed of trust of the Lawrence Lumber Company of date January 2, 1908, to the Crescent Lumber Company, covering the lumber and saw logs of the Lawrence Lumber Company. An inspection of this account which is absolutely undisputed, discloses that during the continuation of the partnership operations of the Lawrence Lumber Company, C. E. Myers doing business as the Crescent Lumber Company, made advances to the said Lawrence Lumber Company in the total sum of about $26,000. Jas. C. Standiford has not paid and did not pay anything but the first year's interest on his indebtedness for the balance of the purchase price of his interest in the business, and Allen Myers has not paid C. E. Myers anything on the note of $10,409.37 for the purchase price of the said property of the Lawrence Lumber Company. These debts being all due, and being largely in excess of the value of the property covered by the deeds of trust securing same, and the partnership having been dissolved by the death of James C. Standiford, and the parties having failed to pay their several indebtednesses, and the said Crescent Lumber Company having called upon the said Allen Myers for payment, and not having received payment, requested the said Geo. B. Neville, trustee in the aforesaid deeds of trust, to foreclose same, and said Geo. B. Neville, trustee, thereupon took possession of the property covered by the said deeds of trust on June 6, 1908, and on June 8, 1908, advertised the same for sale under said deeds of trust on the 2d and 3d days of July, 1908. The notices of sale were inserted in a

newspaper published in Newton county, state of Mississippi, and were posted as required by the deeds of trust and by the statute of the state of Mississippi.

Thereupon A. J. Lyon & Co., one of the creditors of the Lawrence Lumber Company, having a claim in open account for a balance of $429.43, for articles sold the said Lawrence Lumber Company between May 3 and August 13, 1907, began a suit in the chancery court of Newton county, state of Mississippi, on the 25th day of June, 1908, against the Lawrence Lumber Company, Crescent Lumber Company, and Geo. B. Neville, trustee, entered into bond as required by the statutes for the appointment of a receiver without notice, and procured the appointment of D. L. Ragland receiver by decree of date June 26, 1908, without notice to appellants, and the said D. L. Ragland entered into bond as such receiver and immediately took charge of all the property and effects of the Lawrence Lumber Company; the said decree appointing the receiver directing him to take charge of all the property covered by the deeds of trust, sales under which had been advertised by the said Geo. B. Neville, trustee, and which said property was then in the possession of the said Geo. B. Neville, trustee, and authorized the said receiver to sell all of said property at public or private sale. There was ample time before any sale of the property under the deeds of trust would have occurred within which appellee could have given appellants the statutory five days' notice of an application for the appointment of a receiver, even after such time as appellee's counsel first discovered the fact of the death of James C. Standiford. The bill of complaint nowhere alleges the insolvency of the Lawrence Lumber company, nor the insolvency at any time of either of the members of the said Lawrence Lumber Company, and does not allege the insolvency of the Crescent Lumber Company; nor is there any allegation of the inadequacy of other remedies to appellee; nor is it charged that James C. Standiford, or Allen Myers, or the Lawrence Lumber Company was insolvent at the time of the execution of the deeds of trust

of James C. Standiford and Allen Myers covering their interest in the partnership assets of the Lawrence Lumber Company. The bill, further, does not charge fraud against any of the appellants in any particular whatever, and does not deny the validity of any of the debts secured by any of the deeds of trust which the said George B. Neville, trustee, was seeking to foreclose. It simply sets up the fact of the advertisement of the said property for sale under said deeds of trust, and the existence of the said deeds of trust, and the death of James C. Standiford, and the fact that there was no administration upon the estate of James C. Standiford, and that the surviving partner had not given bond for the administration of the partnership estate, and that the surviving partner was "sitting supinely by" and permitting to be done "things contrary to law," and that the trustee in the two deeds of trust from James C. Standiford and Allen Myers was about to sell partnership property for the satisfaction of the individual debts of the partners composing the Lawrence Lumber Company. There is no specific charge in the bill of any invalidity in the deed of trust from the Lawrence Lumber Company to the Crescent Lumber Company, covering the lumber, securing the balance that might be due the Crescent Lumber Company by reason of advances made under the contract of November 26, 1906.

After the appointment of a receiver, the appellants made a motion to vacate the appointment of the receiver, and each appellant made a separate answer to the bill of complaint, setting up the history of the transactions of the Lawrence Lumber Company, James C. Standiford, Allen Myers, and C. E. Myers, which culminated in the various instruments set forth in the record, and in the deeds of trust that were being foreclosed, which said history we have hereinbefore recited in detail. The answers denied the legal conclusions of the bill of complaint as applied to the facts hereinbefore detailed, and denied that it was incompetent and invalid under those facts for the said trustee to foreclose the said deeds of trust, and denied the material allega-

tions of the bill of complaint as to the alleged invalidity of the
deeds of trust of James C. Standiford and Allen Myers on their
individual interests in the property and effects of the Lawrence
Lumber Company, and set up that the said C. E. Myers was en-
titled to a vendor's lien for the unpaid purchase price of said
property thereon, as well as entitled to have the same foreclosed
for the satisfaction of his debt; and the defendant Allen Myers,
the surviving partner, denied the charge that he was "sitting
supinely by" and permitting "things to be done contrary to
law," and denied that he was required by any law whatever to
enter into any sort of bond until the qualification and appoint-
ment of an administrator and the demand of such administrator
upon him to exercise his election to give bond and himself ad-
minister the assets of the partnership.

The reporter will set out, in addition to the statement of facts
which we have just above detailed, the contract of November
26, 1906, made between these parties, and the three trust deeds
hereinbefore referred to.

On this statement of the case the appellee has striven earn-
estly to uphold the appointment of this receiver, without notice.
He insists that the two trust deeds made by the two partners,
Allen Myers and James C. Standiford, are, void, under the
principles announced in *Bank v. Durfey,* 72 Miss. 971, 18
South. 456, and other authorities cited by him.   In the *Durfey
case,* the partnership was wholly insolvent, and the facts were
otherwise clearly different from those shown by this record, and
the case is not applicable.

Learned counsel for appellee next insists that the trust deed
made by the Lawrence Lumber Company to C. E. Myers is void
on its face, within the principles announced in *Acme Lumber
Co. v. Hoyt,* 71 Miss. 106, 14 South. 464, *Harmon v. Hoskins,*
56 Miss. 142, and other decisions of like nature cited.   The
*Acme Lumber Co. case* is altogether different from this case on
its facts.   There was a provision in the instrument involved in
that case that the grantors should be permitted to continue busi-

ness, in the usual course for five years from the date of the instrument, and this the record in that case showed was done, so as to prevent creditors from reaching the property of the company to satisfy their debts, and the trust deed was made with that purpose and intent, and there were suits then pending against the company. Nothing of that sort is averred or proven here, and the instrument is wholly different in its provisions from the instrument in the *Acme Lumber Co. case.* There is no reservation in this trust deed giving the Lawrence Lumber Company a power to continue business for five years in the face of suits brought for debts, and what is of controlling importance is that this instrument is given to secure the purchase money of the plant and property covered by the instrument. The money advanced from time to time by C. E. Myers, some $26,000, as well as the purchase money which he had originally paid the Lake Lumber Company, created the very lumber payment which the trust deed was given to secure. In other words, the Lawrence Lumber Company trust deed was a mere security to C. E. Myers to reimburse him for money which he laid out to create the very property the trust deed covered. Nothing of this sort appeared in the *Acme Lumber Co. case.* The bill avers no fraud, directly or indirectly. It does not charge that either of the partners was insolvent, nor that the Lawrence Lumber Company was insolvent. In short, there is not in the bill any of the allegations essential to have warranted the appointment of this receiver in this summary and severe fashion without notice.

This court has repeatedly condemned the improvident appointment of receivers without notice in cases where such appointment was no more warranted than it was here on the showing made. The same principles have been over and over announced in other states. See the collation of authorities in the brief of learned counsel for appellant. The trust deed to the Lawrence Lumber Company, securing advances made by the Crescent Lumber Company, was a trust deed by a partnership,

on partnership assets, to secure an undisputed partnership debt, the balance of which, when this litigation was instituted, exceeded $8,800. We do not deem it necessary to say more. The appointment was manifestly unwarranted, and the decree refusing to vacate the receivership is reversed, and the receiver is hereby discharged.

In respect to the other appeal from the decree of the court in refusing to modify the order appointing the receiver and giving him possession of all the property, it is to be said that it is also erroneous, and is hereby reversed, and the receiver hereby directed to at once deliver all the property in his possession to George B. Neville, the trustee in the three deeds of trust aforesaid.

Decreed accordingly.

*Reversed.*